# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VILLAGE OF DOLTON, on behalf of itself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) Case Number 05-C-4126 ) ) Judge Holderman |
| vs. | ) ) Magistrate Judge Keys |
| TASER INTERNATIONAL, INC., a Delaware corporation, | ) ) ) |
| Defendant. | ) ) ) ) |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Village of Dolton ("Plaintiff" or "Dolton") files this Opposition to Defendant Taser International, Inc.'s ("TII" or "Defendant") Motion for Summary Judgment and states:

## I. INTRODUCTION

TII has taken the extreme measure of filing a motion for summary judgment despite its repeated failure to produce documents requested during discovery – documents to which Plaintiff is entitled and which are necessary for Plaintiff to develop its case, including its response to TII's motion. TII's discovery abuses necessitated the filing of Plaintiff's pending Amended Motion to Compel Production of Documents from Defendant (the "Motion to Compel").[1] Indeed, TII is litigating this action in a manner reminiscent of how it sold its Taser devices – through a deliberate

---

[1] A true and correct copy of the Motion to Compel is attached hereto as Exhibit A.

campaign of "hide-the-ball" discovery tactics comparable to TII's "hide-the-harm" sales tactics. As it has often done in misrepresenting the safety profile of its stun gun products, or "Tasers," and failing to provide Plaintiff and the Class with the non-lethal Tasers required under parties' agreement, TII recasts Plaintiff's Class Action Complaint (the "Complaint") in a manner designed to conveniently compartmentalize it for summary judgment. For example, TII claims that Plaintiff's breach of warranty claim fails because of TII's untested assertion that there is no privity of contract. Yet, TII also claims that Plaintiff's claims for unjust enrichment and money had and received fail because there is a contract between the parties. TII does this despite refusing to produce scores of relevant and responsive documents, including documents concerning Plaintiff and all documents TII unilaterally deemed applicable to class issues.

TII filed its motion for summary judgment on May 11, 2006 – approximately half-way through the discovery period set by the Court and prior to providing the core documents repeatedly requested by Plaintiff. In its motion, TII prematurely seeks to resolve this matter without providing Plaintiff with the documents requested during discovery and by relying on the untested declaration of Michael Brave (the "Brave Declaration") and the two untested declarations of Dolton's former Chief of Police, Ronald Burge (the "First Burge Declaration" and the "Second Burge Declaration"), although Plaintiff has not yet had the opportunity to depose either of these witnesses. Through its calculated refusal to produce relevant discovery, TII has effectively, though temporarily, stymied Plaintiff's ability to prosecute this action. To put a stop to TII's discovery gamesmanship, on May 11, 2006, Plaintiff filed its Motion to Compel. TII's response to the Motion to Compel is due on June 19, 2006, and the motion is set for hearing before Magistrate Judge Keys on July 19, 2006.

Because TII has not complied with its discovery responsibilities, and in light of Plaintiff's pending Motion to Compel, this Court should deny TII's Motion for Summary Judgment as

premature until Plaintiff has the opportunity to take and receive, at a minimum, the discovery required by Plaintiff, including: (i) all documents in TII's control relating to Plaintiff; (ii) depositions that will result from documents in TII's control relating to Plaintiff; (iii) all documents relating to the Brave Declaration, including the opportunity to depose Mr. Brave regarding his declaration; (iv) all documents relating to the Burge Declarations, including the opportunity to depose Mr. Burge regarding his declarations; and (v) all documents concerning when TII learned that Plaintiff suspended its use of Taser devices. *See* Plaintiff's Response to Defendant's Statement of Material Facts, filed contemporaneously herewith ("Plaintiff's Statement of Facts").

## II.  BACKGROUND

Plaintiff brought this class action because of TII's demonstrably false safety claims in its sale of Taser devices to Plaintiff and members of the putative Class. As alleged in the Complaint, Plaintiff and other members of the Class purchased Taser devices for law enforcement purposes from TII. ¶¶18, 75.[2] TII knowingly concealed the dangerous propensities of its Taser devices and was able to sell its products to Plaintiff and members of the Class through its extensive, uniform, nationwide marketing campaign in which it claimed that Taser devices were "proven to be medically safe," "non-destructive to nerves, muscles and other body elements," and "[would] not cause a heart attack or damage a pacemaker." *See, e.g.,* ¶¶14-45, 21, 24, 55. In other words, TII was supposed to provide safe, non-lethal devices backed by extensive medical research and scientific study. ¶29. The truth is, however, that the Tasers sold by TII are anything but safe and non-lethal.

At the time they purchased Taser devices from TII, Plaintiff and members of the Class were unaware of the true dangerous propensities of Taser devices. ¶56. As detailed in the Complaint, as

---

[2] All citations to "¶__" herein refer to paragraphs of the Complaint.

use of TII's Taser devices has become more widespread, Taser devices have been implicated in numerous deaths, including deaths in the State of Illinois. ¶¶58-59, 61. Indeed, at the time of filing of the Complaint, more than 120 people had died after being shocked with TII's Tasers. ¶61.[3]

On May 19, 2005, Plaintiff formally suspended its use of Taser devices at the direction of Plaintiff's Mayor and by order of the Chief of Police, Ronald Burge ("Chief Burge"). ¶64. Plaintiff filed the Complaint on July 18, 2005 and alleged causes of action for: (i) breach of contract; (ii) unjust enrichment; (iii) money had and received; (iv) deceptive act or practice (alleging a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act); (v) breach of express warranty; and (vi) breach of implied warranty. On August 22, 2005, TII answered and moved to dismiss the Complaint. On October 27, 2005, the Court entered an order denying, in part, TII's motion to dismiss. The Court dismissed Plaintiff's consumer fraud claim and denied the remainder of the motion to dismiss.

Pursuant to status hearing held on November 11, 2005, the Court set the discovery and trial schedule currently governing the action.[4] Fact discovery is not set to close until November 15, 2006 and expert discovery is not set to close until June 28, 2007. The Court ordered discovery schedule contemplates an extensive opportunity for discovery prior to resolution of dispositive motions. Yet, in a transparent attempt to preclude Plaintiff from receiving the documents it needs to prove its case, TII filed its summary judgment motion a full 15 months prior to when it was required to do so under the Court's scheduling order.

---

[3] As of the date of this motion, the number of Taser-related deaths has risen to more than 180.

[4] A true and correct copy of the Court's April 5, 2006 Notification of Docket Entry, which memorializes the Court's scheduling order, is attached to Plaintiff's Motion to Compel as Exhibit D.

As mentioned herein, Defendant has steadfastedly refused to produce discoverable documents. In its motion, Defendant takes the position that there is no privity between the parties, that it had no notice of any problem with the Taser devices purchased by Plaintiff, and that Plaintiff's equitable claims are improper because the parties are bound by a contract. As detailed in Plaintiff's Motion to Compel, to which Plaintiff respectfully refers the Court, Defendant has not produced a single pre-litigation document concerning Plaintiff. Plaintiff, therefore, is left without the documentary evidence it needs to fully oppose and test the factual bases underlying Defendant's arguments. For example, Defendant relies heavily on the Burge Declarations in support of its motion. Burge, however, is no longer employed by Plaintiff and Plaintiff must be afforded, among other things, a reasonable opportunity to depose Burge regarding the statements made in his declaration.

TII has made itself the sole arbiter of the discovery process – selectively determining which documents it will produce. In sum, TII has refused to produce documents until it decides Plaintiff is entitled to such documents. Of course, this is not the legal standard governing the scope of discovery. While TII is free to pursue its defenses and/or objections, it has neither moved for a protective order nor filed any motion that would attempt to (within the rules of civil procedure and discovery standards) limit the scope of Plaintiff's discovery requests. TII's summary judgment motion is both improper and premature.

### III.  LEGAL STANDARD

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is improper where a genuine issue for trial exists, *i.e.*, when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. "This standard places on the movant the burden to point to evidence in the record that demonstrates that there are no genuine issues of

material fact." *S.A.M. Elecs., Inc. v. Osaraprasop*, 39 F. Supp. 2d 1074, 1080 (N.D. Ill. 1999).[5] In deciding whether to deny TII's motion for summary judgment, the Court must accept the nonmoving party's evidence as true, and draw all inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).[6]

## IV. ARGUMENT

### A. Disputed Issues of Material Fact Make Summary Judgment Improper

In support of its summary judgment motion, TII filed a Rule 56.1 statement of purportedly uncontested facts. Many of the facts relied on by TII, however, are anything but undisputed, making summary judgment improper, as demonstrated by Plaintiff's Statement of Facts, to which Plaintiff respectfully refers the Court.

### B. Defendant Breached Its Contract With Plaintiff and the Class

Defendant claims in its summary judgment motion that the entire contract between the parties is memorialized in the limited warranty Plaintiff produced to Defendant during discovery (the "Limited Warranty"), and that Defendant did not breach that Limited Warranty. "The law is clear that documents and brochures may constitute express warranties [and] [s]uch affirmations made during a bargain become a part of the basis of the bargain unless clear affirmative proof shows otherwise." *Ampat/Midwest, Inc. v. Illinois Tool Works, Inc.*, No. 85 C 10029, 1988 U.S. Dist. LEXIS 4611, at *11 (N.D. Ill. May 18, 1988); *see also* 810 ILCS 5/2-313(a) ("Any affirmation of fact or promise made by the seller to the buyer which relates to the good and becomes part of the

---

[5] Unless otherwise indicated, internal citations and quotations are omitted, and all emphasis is added.

[6] "The Court may not try disputed fact questions on the basis of evidence before it and all inferences drawn from such evidentiary materials must be in favor of the non-moving party." *Owens v. Glendale Optical Co.*, 590 F. Supp. 32, 34 (S.D. Ill. 1984). "The sole determination of the trial court is whether or not a dispute as to a material fact exists and the burden is on the movant to make this showing." *Id.*

basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."). "Under the [UCC]... disclaimer of an affirmation or description found to be an express warranty is invalid if inconsistent with the terms of the agreement." *Snelten v. Schmidt Implement Co.*, 269 Ill. App. 3d 988, 993 (Ill. App. 1995). [7] Moreover, "[c]omment 1 to section 2-316 (exclusion or modification of warranties) states 'this section seeks to protect a buyer from unexpected and unbargained for language of disclaimer by denying effect to such language when inconsistent with language of express warranty.'" *See id.* at 994.

One of the fact issues before the Court is the scope of the agreement between the parties. The Complaint alleges Defendant sold devices to Plaintiff and the Class warranted as "non-lethal" and "safe," with no adverse long-term health consequences. *See, e.g.,* ¶¶14-15, 17, 21, 23-24, 28-29. Defendant's affirmations of its products' safety formed part of the basis of the bargain and created an express warranty that the Tasers would conform to Defendant's affirmations and promises. In breach of those affirmations, Plaintiff alleges Taser provided Plaintiff and the Class with Taser devices whose use can result in death. *See* ¶¶30, 47-48, 58-59, 61.

Now, Defendant prematurely argues the entire scope of the parties' agreement is memorialized in the Limited Warranty, despite its express warranties to Plaintiff and the Class. Because any language in the Limited Warranty disclaiming Defendant's affirmations or descriptions

---

[7] Comment 4 to 810 ILCS 5/2-313 provides that "[i]n view of the principle that the whole purpose of the law of warranty is to determine ***what it is that the seller has in essence agreed to sell***, the policy is adopted of those cases which refuse except in unusual circumstances to recognize a material deletion of the seller's obligation. Thus, a contract is normally a contract for a sale of something describable and described. A clause generally disclaiming "all warranties, express or implied" cannot reduce the seller's obligation with respect to such description and therefore cannot be given literal effect under Section 2-316. This is not intended to mean that the parties, if they consciously desire, cannot make their own bargain as they wish. But in determining what they have agreed upon[,] good faith is a factor and consideration should be given to the fact that the probability is small that a real price is intended to be exchanged for a pseudo-obligation."

found in Defendant's express warranties is invalid if inconsistent with the terms of the parties' agreement, the Court cannot rule on summary judgment without determining the full scope of the parties' relationship. *See Snelten*, 269 Ill. App. 3d at 993. Indeed, Plaintiff is not claiming that TII breached the Limited Warranty. Rather, Plaintiff claims that TII breached its obligation to provide safe, non-lethal Tasers. A determination of the full scope of TII's responsibilities is impossible at this stage of the proceedings in light of Defendant's refusal to participate in the discovery process.

### C. Without Additional Discovery, It is Impossible to Determine Whether Defendant Had Actual Notice of Plaintiff's Suspension of Taser Use

TII's summary judgment motion hinges on whether Plaintiff provided TII with notice of its breach of contract and warranty claims in satisfaction of 810 ILCS 5/2-607(3)(a). Pursuant to § 2-607(3)(a), a seller must be notified of any breach within a reasonable time after the buyer should have discovered the breach. "Benefits of notifying the seller of the breach include preventing stale claims, allowing the seller to investigate the claims, providing the seller with an opportunity to cure, and encouraging negotiation and settlement between the parties." *Muehlbauer v. GM Corp.*, No. 05 C 2676, 2006 WL 1371422, at *10 (N.D. Ill. May 15, 2006) (interpreting § 2-607, but applying Maine law).

Importantly, the Illinois Supreme Court has noted that they buyer does not have to provide notice when the seller actually knows about the defect of a particular product. *See Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 492 (1997) (the seller needs to be notified that a particular transaction is troublesome and needs to be watched).[8] Thus, if a seller such as TII has actual

---

[8] *See also Malawy v. Richards Mfg. Co.*, 150 Ill. App. 2d 549 (Ill. App. 1986) (actual knowledge satisfied notice requirement where seller hospital removed defective medical device from plaintiff); *Crest Container Corp. v. R.H. Bishop Co.*, 111 Ill. App. 3d 1068, 1077 (Ill. App. 1982) (actual knowledge satisfied notice requirement where seller's employee visited plaintiff to "get to the bottom of why" the product was malfunctioning); *Overland Bond & Investment Corp. v. Howard*, 9 Ill. App. 3d 348 (Ill. App. 1972) (actual

knowledge that a particular transaction is troublesome, 810 ILCS 5/2-607(3)(a) is satisfied and direct notice by the buyer is not required.

Absent additional discovery, it is impossible for Plaintiff to present any evidence regarding when TII actually became aware that Plaintiff had suspended its use of Taser devices or, in other words, when TII had actual knowledge that its transactions with Plaintiff were troublesome and needed to be watched. *See Connick*, 174 Ill. App. 2d at 493. If TII or its employees were aware of Plaintiff's suspension of the use of Taser devices prior to the filing of this action, then the notice requirement of 810 ILCS 5/2-607(3)(a) would be satisfied and summary judgment would be clearly improper. Indeed, additional evidence in this regard could permit a jury to conclude that TII knew of Plaintiff's problems with the Taser devices prior to July 18, 2005. *See, e.g., Hays v. G.E. Co.*, 151 F. Supp. 2d 1001, 1010-11 (N.D. Ill. 2001). As a result, the Court should withhold ruling on TII's summary judgment motion and grant Plaintiff the opportunity to file a supplemental opposition brief once it has been given a full and adequate opportunity to conduct discovery on this issue.

### D. Fact Issues Preclude Summary Judgment on Plaintiff's Unjust Enrichment and Money Had and Received Claims

TII argues that Plaintiff cannot seek relief under quasi-contract theories because an express contract governs the subject matter of this action.[9] In its summary judgment motion, TII argues the Limited Warranty is the sole document memorializing the parties' agreement and governing claims of "defects that occurred with the Dolton TASER devices." TII then concludes that the Complaint alleges that TII's Tasers were defective and that Plaintiff's "unjust enrichment claim must fail."

---

knowledge satisfied notice requirement where the car was towed to the seller's auto dealership and seller's employees were told that the car needed major repairs)).

[9] Plaintiff recognizes that typically, the presence of an express contract nulls any quasi-contract claims arising out of the same subject matter. *Muehlbauer*, 2006 WL 1371422, at *8.

At this stage of the discovery process, even if there is a written agreement that governs some portion of the parties' relationship, the express contract on which TII relies, *i.e.*, the written warranty, does not cover all of Plaintiff's claims. *See Muehlbauer*, 2006 WL 1371422, at *8 (court denied motion to dismiss because Plaintiff disputed whether written agreements governed the subject matter of their unjust enrichment action, reasoning that "terms may overlap and express contracts may indeed seek any implied contract claim, but it is premature to dismiss the quasi-contract claims based on contracts not adequately presented to the court."). Moreover, alternative remedies are appropriate throughout the pleading and discovery stage, and Plaintiff should not be made to choose until completion of discovery. *See Snap-On Inc. v. Ortiz*, No. 96C2138, 1999 WL 592194, at *14-*15 (N.D. Ill. Aug. 3, 1999) (granting plaintiff a reasonable time before trial to choose which theory it would pursue); *Libco Corp. v. Dusek*, No. 77C4386, 1986 WL 5212, at *13 (N.D. Ill. Apr. 30, 1986) (plaintiff need not choose one theory over another prior to trial) (quoting *Finke v. Woodard*, 122 Ill. App. 3d 911, 919 (Ill. App. 1984) ("Plaintiffs were entitled to seek both remedies, legal and equitable, even though they were inconsistent, unless it could be said that they elected one remedy or the other.")). By withholding documents and playing games with the discovery process, Defendant has thwarted Plaintiff's ability to evaluate and elect its remedies, making summary judgment on Plaintiff's equitable claims improper.[10]

---

[10] In support of its argument that Plaintiff cannot maintain its equitable claims, Defendant relies on *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007 (7th Cir. 1985). In that case, however, the district court granted summary judgment after "***two years of pretrial discovery***." *Id.* at 1010. Here, by contrast, TII has failed to produce documents necessary for Plaintiff to make an informed decision concerning which remedy to elect. Because the parties have only begun the discovery process and summary judgment is premature, Plaintiff is entitled to maintain alternative theories of recovery. *See Asad v. Hartford Life Ins. Co.*, 116 F. Supp. 2d 960, 964 (N.D. Ill. 2000) (citing *Quadion Corp. v. Mache*, 738 F. Supp. 270 (N.D. Ill. 1990) (reasoning *First Commodity Traders* does not apply at the pleadings stage and declining to dismiss claim for equitable relief because "[u]nder Rule 8(e)(2) . . . plaintiffs may raise alternative claims for breach of contract and unjust enrichment despite the inconsistency of those claims.")).

The Limited Warranty covers repairs to correct issues related to defective materials or workmanship and depicts the claims as relating to defects in design, *i.e.*, problematic parts that can be replaced by TII. While the scope of the Limited Warranty may overlap with the implied (or express) contract between the parties, it is premature to hold that this one document precludes Plaintiff from recovering on its unjust enrichment and money had and received claims. TII's mere invocation of the existence of the Limited Warranty should not automatically bar Plaintiff from maintaining its equitable claims during this discovery phase of this action – especially in light of the fact that Plaintiff's equitable claims go beyond whether the devices malfunctioned and address, among other things, TII's improper marketing and selling of its Tasers as non-lethal devices backed by extensive medical research. Thus, while there may be a written warranty in existence that governs certain rights and remedies, that document does not govern "what it is that [TII] has agreed in essence to sell" or the entirety of this action. *See* 810 ILCS 5/2-313, cmt. 4. Without the benefit of additional discovery, it is premature to grant summary judgment based on the warranty TII contends governs this action.

### E. Fact Issues Remain Regarding Whether Plaintiff Was in Privity with Defendant

Although TII claims that a breach of contract claim bars Plaintiff's equitable causes of action, TII nevertheless argues that there is no contract governing the sale of Tasers because TII and Plaintiff were not in privity with each other for the purchase of Taser devices and that, because privity is a prerequisite to recover economic damages for breach of implied warranty, summary judgment is appropriate. Once more, TII relies on documents produced by Plaintiff, while simultaneously withholding its own documents, to make its argument. Specifically, TII states that "[t]he invoices produced by Dolton show that Dolton purchased its TASER devices from a third party distributor, Ray O'Herron Co., Inc." and that the "only items Dolton purchased directly from

TASER Int'l were TASER cartridges, batteries, handles, and labels."

Whether Plaintiff was in privity with TII remains as an issue of fact to be addressed during discovery. The limited amount of discovery completed to date indicates that privity is likely to exist and that summary judgment is improper until additional discovery can be completed, including, among other things, the opportunity for Plaintiff to depose former Chief Burge, who appears to be under TII's control.[11] Specifically, TII's argument is premised on a distinction without a difference. The invoices and documents produced by Plaintiff clearly show Plaintiff ordered Taser parts directly from TII. *See* Plaintiff's Statement of Facts at II, ¶2. Plaintiff also purchased Taser-related training directly from TII. *Id.* Without this direct relationship with TII, Plaintiff would not have known how to use its Taser devices and would have been without the parts necessary for them to function. Moreover, former Chief Burge, who was responsible for purchasing Plaintiff's Tasers, is no longer employed by Plaintiff and, at this time, Plaintiff is without sufficient documentary evidence to determine from whom Plaintiff purchased each Taser device. *Id*. at I, ¶5(a). TII also fails to meet its evidentiary burden on this point because TII simply does not account for approximately 70% of the 14 Taser devices purchased by Plaintiff. *See id.* at I, ¶6(a).

Alternatively, in spite of the general rule that privity of contract is a prerequisite to recover economic damages for breach of implied warranty, "privity is not required when the remote manufacturer [of a product] knows 'the identity, purpose and requirements of the dealer's customer

---

[11] TII's "lack of privity" argument undermines the entire foundation of its summary judgment motion. If there is no privity of contract between the parties, then Plaintiff's equitable claims cannot be resolved at summary judgment. At a minimum, additional discovery is needed on this issue and summary judgment is premature.

and manufactured or delivered the goods specifically to meet those requirements.'"[12] *Crest Container*, 111 Ill. App. 3d at 1076 (quoting *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980, 992-93 (Ill. App. 1980)).[13]

TII sold Taser devices (a dangerous product) to Plaintiff solely for law enforcement purposes. The Complaint alleges that TII kept detailed records on what law enforcement agencies purchased its Tasers. Specifically, ¶14 describes TII's annual report filed with the Securities and Exchange Commission on March 31, 2005, which states that "over 7,000 law enforcement agencies have made initial purchases" of Tasers and lists many of them. Thus, TII knew the identity, purpose and requirements of its customers, *i.e.*, Plaintiff. It is beyond dispute that Plaintiff's purchase of Tasers was upon the consideration that a merchantable non-lethal weapon, fit and suitable for the law enforcement purposes of Plaintiff, would be supplied. Plaintiff and other members of the Class sought nothing else. *See Frank's Maint.*, 86 Ill. App. 3d at 993.[14] Thus, although Plaintiff satisfies the privity requirement and TII has failed to demonstrate that there is no genuine issue of material fact regarding privity, privity is not required and TII's motion should be denied.

### F. The Complaint Does Not Improperly Rely on Future Damages

TII argues that summary judgment is proper because Plaintiff "alleges future damages, not

---

[12] In addition, "by marketing a product that was inherently and unnecessarily dangerous, and therefore not 'fit for the ordinary purposes for which such goods are used,' defendant has breached its implied warranty of merchantability." *Drayton v. Jifee Chem. Corp.*, 395 F. Supp. 1081, 1094 (N.D. Ohio 1975).

[13] "[I]mplied warranties must be liberally construed in favor of the buyer." *Richards v. Goerg Boat & Motors*, 179 Ind. App. 102, 110 (1979).

[14] Sometimes, when a police department places an order for Tasers based on TII's aggressive marketing campaign, it appears as though the products may come from one of the dealers in TII's extensive dealer/sales representative network. The police department, however, may have no knowledge of the "dealer" and believe it is conducting business with TII. The factual issues relating to TII's relationship with its dealers and its customers, including the level of control TII exercises over its "dealers" still remains to be explored during discovery and should not be used to prematurely terminate Plaintiff's claims on summary judgment.

present damages" and that "[t]here is no evidence that the Dolton TASER devices caused Dolton a present injury." TII's argument grossly misconstrues the Complaint, which alleges that had TII not blatantly misrepresented the safety profile of its Taser devices, which, ***as TII now admits***, have the capacity to kill, Plaintiff would not have purchased Taser devices.[15] Thus, Plaintiff's damages occurred when it purchased TII's product. In addition, the measure of damages for a breach of contract action is the difference in value between the Tasers Defendant promised to provide Plaintiff and the Class (*i.e.*, safe, non-lethal Tasers) and what Defendant actually delivered (*i.e.*, potentially lethal devices). *See Kalal v. Goldblatt Bros., Inc.*, 53 Ill. App. 3d 109, 112 (Ill. App. 1977). Here, Plaintiff has already incurred the damages in that it paid for a product – a non-lethal stun gun – but did not receive that product.

The Complaint alleges actual damages as a result of TII's omission of material facts concerning the safety of Tasers. ¶¶20, 66-70. Specifically, Plaintiff alleges that all Tasers manufactured and distributed by TII – including those purchased by Plaintiff and members of the Class – are unsafe, potentially lethal, and are not backed by extensive, independent medical research. *See, e.g.*, ¶21 (extensive medical research representations were false); ¶24 (TII never conducted research and Tasers are implicated in deaths and injuries); ¶29 (TII has "no idea" how Tasers impact scores of people); ¶60 (Tasers cause serious physical injury and death); ¶65 (TII concealed true safety profile of Tasers in uniform, nationwide campaign of false and misleading marketing). TII's false and misleading marketing campaign caused Plaintiff to purchase Tasers it would not have otherwise bought, forced Plaintiff to suspend the use of all Tasers, and therefore caused Plaintiff's

---

[15] On June 28, 2005, TII issued a revised Training Bulletin which provided that, "the user should attempt to minimize the uninterrupted duration and total number of TASER device applications." More importantly, the Training Bulletin revision contains an admission that multiple Taser applications may lead to death.

economic loss and, among other things, inequitably enriched TII. ¶¶20-23, 64.

The Complaint alleges Plaintiff purchased dangerous Tasers that, contrary to TII's representations, are not backed by extensive medical research and, when functioning as TII intended, can cause serious harm or death. Without TII's conduct, Plaintiff and Class members would not have purchased Tasers – hence, the damage. ¶¶20-23. Further, "the required allegation of proximate cause is minimal since that determination is best left to the trier of fact." *Connick*, 174 Ill. 2d. at 504 (addressing proximate cause in the context of consumer fraud). Thus, the Complaint is not based on theoretical, future damages. As a result, TII's Motion for Summary Judgment should be denied.

## V. CONCLUSION

For the reasons discussed herein, the Court should deny TII's Motion for Summary Judgment. In the alternative, the Court should withhold ruling on TII's summary judgment motion and grant Plaintiff the opportunity to supplement its opposition to Defendant's motion upon completion of the discovery period.

This 15th day of June 2006.
**THE VRDOLYAK LAW GROUP, LLC**

*/s/ John K. Vrdolyak (electronically filed)*
John Vrdolyak
Dennis Both
741 North Dearborn
Chicago, IL 60610
(312) 482-8200

**LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP**
Paul J. Geller (*admitted pro hac vice*)
Robert J. Robbins (*admitted pro hac vice*)
Marisa N. DeMato (*admitted pro hac vice*)
197 S. Federal Highway, Suite 200
Boca Raton, FL 33432-4946
Tel: (561) 750-3000
Fax: (561) 750-3364

**LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP**
Robert Rothman
58 S. Service Road, Suite 200
Melville, NY 11747
Tel: (631) 367-7100
Fax: (631) 367-1173

**CAVANAGH & O'HARA**
William K. Cavanagh
407 E. Adams Street
P.O. Box 5043
Springfield, IL 62705
Tel: (217) 544-1771
Fax: (217) 544-9894

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I, John K. Vrdolyak, an attorney in this cause, certify that I served a copy of the foregoing on the counsel of record, as listed below, electronically through the Court's CM/ECF and/or via e-mail system on June 15, 2006:

John R. Maley
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN 46204-3535

David T. Ballard
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, IL 60606-2833

**THE VRDOLYAK LAW GROUP, LLC**

*/s/ John K. Vrdolyak (electronically filed)*