# EXHIBIT "A"

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VILLAGE OF DOLTON, on behalf of itself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case Number 05-C-4126 |
| vs. | ) ) ) | Judge Holderman |
| TASER INTERNATIONAL, INC., a Delaware corporation, | ) ) ) | Magistrate Judge Keys |
| Defendant. | ) ) ) ) | |

**PLAINTIFF'S AMENDED MOTION TO COMPEL**
**PRODUCTION OF DOCUMENTS FROM DEFENDANT**

Pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 37.2, Plaintiff

Village of Dolton ("Plaintiff") respectfully moves this Court for entry of an Order compelling

Defendant Taser International, Inc. ("TII" or "Defendant") to produce forthwith documents

responsive to Plaintiff's First Request for Production of Documents ("First Requests").[1] As grounds

therefore, Plaintiff states as follows:

## I.    INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff brought this class action against Defendant because TII sold Taser devices to

Plaintiff and members of the putative Class that are unsafe and potentially lethal.  As alleged in

---

[1]    A true and correct copy of the First Requests is attached hereto as Exhibit A.

Plaintiff's Class Action Complaint (the "Complaint"), Plaintiff and other members of the Class purchased Taser devices and related equipment for law enforcement purposes from Defendant. The Complaint alleges that TII was able to sell its Taser devices to Plaintiff and members of the Class through its extensive, uniform, nationwide marketing campaign in which TII claimed that Taser devices were "proven to be medically safe," "non-destructive to nerves, muscles and other body elements," and "[would] not cause a heart attack or damage a pacemaker." In other words, TII sold what it claimed were safe, non-lethal devices backed by extensive medical research and scientific study. The truth is, however, that there is a fundamental lack of understanding and medical research as to how Defendant's Taser devices work.

At the time they purchased Taser devices from Defendant, Plaintiff and members of the Class were unaware of the true dangerous propensities of Taser devices. As detailed in the Complaint, as use of TII's Taser devices has become more widespread, Taser devices have been implicated in numerous deaths. Indeed, more than 120 people have died after being shocked with Defendant's Tasers.[2]

Following its May 19, 2005 suspension of the use of all Taser devices, Plaintiff filed the Complaint on July 18, 2005 and alleged causes of action for: (i) breach of contract; (ii) unjust enrichment; (iii) money had and received; (iv) deceptive act or practice (alleging a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act); (v) breach of express warranty; and (vi) breach of implied warranty. On August 22, 2005, Defendant simultaneously answered and

---

[2]     As of the date of this motion, the number of Taser-related deaths has risen to approximately 180.

moved to dismiss the Complaint. On October 27, 2005, the Court entered an order denying, in part, Defendant's motion to dismiss. Specifically, the Court dismissed Plaintiff's deceptive act or practice claim and denied the remainder of the motion to dismiss.

In order to prosecute its claims and address the numerous defenses raised by Defendant, Plaintiff propounded the First Requests. The First Requests focused primarily on documents concerning: (i) Defendant's sale of Taser devices to Plaintiff and the Class, including claims of safety in Defendant's sales and training materials; (ii) testing and scientific study of Taser devices, including documents evidencing Defendant's involvement in third party studies of Taser devices; and (iii) injuries and deaths following use of Taser devices. After asking for and receiving two extensions of time to respond to the First Requests, Defendant served its discovery responses on March 13, 2006.[3] As discussed herein, Defendant's responses were woefully insufficient and often uniformly unresponsive.

Most troubling, Defendant refused to produce internal company documents relating to its testing, analysis, or understanding of the medical health and safety profile of Taser devices, withholding key documents that are in Defendant's exclusive possession, such as e-mails and internal memoranda demonstrating the basis for TII's claims of Taser safety – the same claims it used, among other things, to enter into contracts with Plaintiff and the Class and unjustly enrich itself. In short, Defendant's production utterly failed to include internal TII documents – not a single e-mail or handwritten note can be found in Defendant's production. It strains all boundaries of logic

---

[3]     A true and correct copy of Defendant's responses to the First Requests is attached hereto as Exhibit B.

for a publicly-traded company to produce no e-mails or other internal company documents in response to the First Requests, which, among other things, focused on whether TII unjustly enriched itself or breached contracts with Plaintiff and members of the Class by providing them with unsafe and potentially lethal Taser devices – devices TII uniformly sold as safe and backed by extensive medical research.[4]

Defendant has also refused to produce responsive documents by limiting its responses to documents involving Plaintiff. By refusing to provide any class-related discovery, TII has made itself the sole arbiter of the discovery process – selectively determining which documents fall into the "class discovery" category and which documents are sufficiently merits related (or related to Plaintiff) for production. Defendant has not, however, moved for protective order. Further, in the November 10, 2005 Report of Parties' Planning Meeting, the parties mutually agreed that:[5]

> The parties agree that discovery will be needed on the following subjects: Plaintiff anticipates requiring discovery on the safety and testing of TASER devices, defendant's marketing and distribution of TASERS, TASER sales, TASER-related

---

[4]    Defendant has produced some responsive documents. The 723 pages Defendant initially produced, however, are almost solely composed of *publicly available* documents, news articles, and press releases. While these documents are relevant and responsive, their production must be underscored by the fact that Defendant refused and failed to adequately respond to almost all of the First Requests. In response to correspondence from Plaintiff's counsel regarding Defendant's refusal to produce documents, Defendant recently produced its purported "Research Compendium." While the compendium is also responsive to the First Requests, it does nothing to cure the many glaring deficiencies in TII's production of documents. Specifically, the compendium is composed primarily of publicly-available reports. It contains no internal TII documents. In addition, on May 9, 2006, TII produced 14 versions of its training CDs and agreed to make available numerous "volunteer exposure forms." While its production of these documents is a step in the right direction for TII, Defendant still has a long way to go to fully respond to the First Requests.

[5]    A true and correct copy of the Report of Parties' Planning Meeting is attached hereto as Exhibit C.

> training, deaths or injuries following use of a TASER device, TASER warranties, and class certification issues. Defendant anticipates requiring discovery on plaintiff's use and purchase of TASER devices, examination of plaintiff's TASER devices, Plaintiff's damages, and class certification issues.

Importantly, Defendant never sought to bifurcate merits discovery in the Report of Parties' Planning Meeting and did not raise bifurcation of discovery during the November 15, 2005 status hearing at which the Court established the parties' current discovery schedule.[6]

In sum, it appears that Defendant's position is that it will not produce documents until it decides Plaintiff is entitled to such documents. Of course, this is not the legal standard governing the scope of discovery. While Defendant is free to pursue its defenses and/or objections, it has neither moved for a protective order nor filed any motion that would attempt to (within the rules of civil procedure and discovery standards) limit the scope of Plaintiff's discovery requests. As such, the Court should compel Defendant to respond to Plaintiff's First Requests consistent with its obligations under the Federal Rules of Civil Procedure and produce all documents requested herein.

## II.    COMPLIANCE WITH LOCAL RULE 37.2

On April 3, 2006, Plaintiff sent a letter to Defendant stating that despite the extensions afforded to Defendant in responding to the First Requests, Defendant had failed to produce volumes of substantive documents within its exclusive possession (the "April 3rd Letter"). In addition, Plaintiff requested in the April 3rd Letter that Defendant withdraw its objections to discovery and produce all requested documents within 10 days. The April 3rd Letter went on to request that a telephonic conference be held in compliance with Local Rule 37.2 if Defendant was going to

---

[6]    True and correct copies of the April 5, 2006 Notification of Docket Entry and the transcript from the November 15, 2005 status hearing are attached hereto as Exhibit D.

continue to refuse to produce all responsive documents. On April 13, 2006, Defendant responded with a letter claiming the First Requests were overbroad and that class discovery was premature (the "April 13th Letter").[7] Moreover, Defendant stated that because "Plaintiff has not made a *prima facie* showing that the documents it [you] request are likely to substantiate class certification," that this form of discovery "is improper at the pre-certification stage of this case."

On May 4, 2006 and May 8, 2006, counsel for Plaintiff spoke telephonically with counsel for Defendant in a good faith attempt to resolve the issues discussed herein. During these conferences, Defendant maintained its position that it would not provide class-related discovery to Plaintiff and that the First Requests were overbroad.

## III.    ARGUMENT

A motion to compel documentary discovery may be made under Rule 37 where, as in this case, "another party fails to respond to a discovery request, or where a party's response is evasive or incomplete." Fed. R. Civ. P. 37(a)(2)-(3); *Meyer v. S. Pac. Lines*, 199 F.R.D. 610, 610 (N.D. Ill. March 26, 2001) (granting motion to compel). More importantly, "the discovery rules allow the parties 'to obtain the fullest possible knowledge of the issues and facts before trial.'" *In re Thomas Consol. Indus., Inc.*, No. 04 CV 6185, 2005 U.S. Dist. LEXIS 40761, at *17 (N.D. Ill. May 11, 2005). "The Supreme Court has explained that 'mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.'" *Id.* (quoting *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). Therefore, "either party may compel the other to disgorge whatever facts he has in his

---

[7]    True and correct copies of the April 3rd Letter and the April 13th Letter are attached hereto as Exhibit E.

possession." *Id.* The rationale behind this framework is to "allow decisions on the merits, as opposed to litigation by surprise." *Id.*

The well-settled rule governing discovery under Rules 34 and 26 is that parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to a claim or defense of the party seeking discovery, or to the claim or defense of any other party." Fed. R. Civ. P. 26(b)(1). Moreover, a request for discovery "'should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action.'" *Meyer,* 199 F.R.D. at 611-12 (quoting *AM Intern., Inc. v. Eastman Kodak Co.,* 100 F.R.D. 255, 257 (N.D. Ill. 1981); *see also* Fed. R. Civ. P. 26(b)(1). Thus, Rule 26 ties "relevance" to the parties' claims and defenses, but that does not mean that the scope of relevant discovery is limited to the four corners of the pleadings. *See, e.g., Shapo v. Engle,* No. 98 C 7909, 2001 WL 629303, at *2 (N.D. Ill. May 25, 2001) (stating that "[d]iscovery is a search for the truth" and that "[t]he burden rests upon the objecting party to show why a particular discovery request is improper."); *Beauchem v. Rockford Prod.,* No. 01 C 51034, 2002 WL 100405, at *1 (N.D. Ill. Jan. 24, 2002) (Court permitted discovery into defendant's savings and retirement plan and correlated pension plan even though complaint's allegations centered around the company's employee stock ownership plans, holding "even as amended, Rule 26 allows the discovery Plaintiff seeks").

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Thus, courts consistently hold that the Federal Rules set liberal limits on the scope of pre-trial discovery and "look unfavorably upon significant restrictions placed upon the discovery process." *Engle,* 2001 WL 629303, at *2 ("courts have consistently

adopted a liberal interpretation of the discovery rules."); *see also McNally Tunneling Corp. v. City of Evanstown*, No. 00 C 6979, 2001 U.S. Dist. LEXIS 18840, at *4 (N.D. Ill. Nov. 1, 2001) (Court has broad discretion to decide which party is correct) (citing *Packman v. Chicago Tribune Co.*, 267 F. 3d 628 (7th Cir., 2001) (district court has broad discretion whether to grant or deny motion to compel.))

Equally as important, Plaintiff filed this action as a class action. The Federal Rule of Civil Procedure 23(c)(1) requires that this Court make a determination as to class certification at the earliest stage in the litigation. *See Coe v. Circle Express Inc.*, No. 89 C 0884, 1991 U.S. Dist. LEXIS 2416, at *1 (N.D. Ill. Feb. 22, 1991) (granting motion for class certification and reasoning that "Rule 23 states that a class action should be certified 'as soon as practicable after the commencement of the action.'"); *see also Peoples v. Sebring Capital Corp.*, 209 F.R.D. 428, 429 (N.D. Ill. 2002) ("the federal rules expressly provide that a court shall determine, 'as soon as practicable after the commencement of an action brought as a class action,' whether it so be maintained.") More importantly, "[a] class action may only be certified if [the Court is] satisfied after rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Miller v. McCalla et al.*, 198 F.R.D. 503, 505(N.D. Ill. 2001).

In light of the "as soon as practicable" and "rigorous analysis" class certification requirements, Defendant's uniform objection to all class discovery is patently unreasonable. Not only will Defendant's position frustrate the timely litigation of this action by Plaintiff, it will disrupt the Court's ability to undertake a rigorous analysis of whether the requirements of Rule 23 have been met. Indeed, virtually all responsive documents are within the exclusive control of Defendant. Therefore, compelling Defendant to produce responsive documents and comply with the discovery rules is proper.

## IV.    DEFENDANT SHOULD BE COMPELLED TO PRODUCE ADDITIONAL DOCUMENTS RESPONSIVE TO THE FIRST REQUESTS

Through this motion, Plaintiff requests that the Court compel TII to produce the following categories of documents:

### A.    Documents Concerning Defendant's Training, Marketing, and Advertising Materials

This action centers on Defendant's sales of its Taser devices to Plaintiff and members of the Class. As such, Defendant's training, marketing, and advertising materials go to the heart of whether Defendant breached its contracts with Plaintiff and the Class, was unjustly enriched, collected money to which it was not, in equity, entitled, or breached warranties concerning the safety or performance of its Taser devices. In order to further substantiate its claims, as well as determine what materials TII provided to potential class members, the First Requests seek, among other things, documents concerning:

(i)    Taser-related marketing and advertising materials sent to or presented to any law enforcement agency by TII (Request Nos. 1, 30);

(ii)    presentations or demonstrations by Defendant to any third party concerning the safety or performance of Tasers (Request No. 10);

(iii)    all lesson plans for Tasers or Taser training produced by TII at any time, as well as documents, notes, and other materials related to the formulation of such plans (Request No. 26);

(iv)    instructions for the use of Tasers, including instruction manuals and training materials (Request No. 27);

(v)    contracts and agreements between Defendant and third parties to promote Taser devices, including the distribution of marketing materials and training guidelines (Request Nos. 68, 69); and

(vi)    communications with the Attorney General for the State of Arizona concerning marketing, promotion, and sales of Tasers (Request No. 74).

**B.    Documents Concerning Taser Testing and Safety**

In order to further assess whether Defendant sold Taser devices to Plaintiff and the Class that were unsafe or potentially lethal, and whether Defendant breached its contracts with Plaintiff and the Class, was unjustly enriched, collected money to which it was not, in equity, entitled, or breached warranties concerning the safety or performance of its Taser devices, the First Requests seek documents concerning:

(i)    all studies performed on the safety, medical impact, or physical performance of Tasers, including data relating to testing of Tasers on humans and animals (Request Nos. 3, 6, 9, 12, 13-16, 18, 22-23);

(ii)    raw data, notes, videotapes, and the like of Taser-related studies, experiments, testing, or demonstrations (Request Nos. 5, 31);

(iii)    data relating to testing of Tasers performed at specific facilities or by specific persons (Request Nos. 7-8);

(iv)    whether TII was involved, financially or otherwise, in any third-party testing of Tasers (Request Nos. 11, 24-25, 32-34, 42-45);

(v)    studies and data concerning whether Tasers are safe to use on individuals with "excited delirium" or individuals on drugs (Request No. 38);

(vi)    why Defendant sold its Tasers as "non-lethal" as opposed to "less lethal" (Request No. 55);

(vii)    why Defendant changed its marketing materials on June 28, 2005 to state, *for the first time*, that repeated use of a Taser on a human could result in death or injury, and that Taser users should attempt to minimize the "total number of Taser device applications" (Request Nos. 56-63); and

(viii)    the make-up and function of Defendant's Scientific and Medical Advisory Board (Request Nos. 64-67).

**C.    Documents Concerning Taser-Related Injuries and Deaths**

As alleged in the Complaint, Defendant's "safe" and "non-lethal" Taser devices sold to Plaintiff and members of the Class have resulted in scores of Taser-related deaths and injuries,

including Taser-related deaths in the State of Illinois. In an effort to further determine why Defendant's premiere product is killing and injuring people, as well as the extent of such injuries and deaths, and thus further determine whether Defendant breached its contracts with Plaintiff and the Class, was unjustly enriched, collected money to which it was not, in equity, entitled, or breached warranties concerning the safety or performance of its Taser devices, the First Requests seek documents concerning:

(i)    all reports, formal or informal, made to TII by any person, entity, or agency, concerning injuries allegedly resulting from use of a Taser (Request Nos. 17, 70);

(ii)    in-custody deaths following application of a Taser, including communications by TII to any third party concerning such deaths (Request No. 39);

(iii)    injuries following application or use of a Taser, including communications by TII to any third party concerning such injuries (Request Nos. 40, 75);

(iv)    TII's communications with medical health professionals and third parties concerning whether use of a Taser resulted in, or contributed to, human deaths or injuries (Request Nos. 50-51);

(v)    specific incidents of death following use of a Taser (Request No. 52); and

(vi)    lawsuits in which Taser has been sued for personal injury or wrongful death (Request No. 71).

**D.    Documents Concerning Class Members**

In preparation for moving for certification of the Class, several of the First Requests seek documents related to the elements of Rule 23 of the Federal Rules of Civil Procedure. For example, the First Requests seek documents concerning:

(i)    Defendant's contracts, agreements, or other documents evidencing the purchase of Tasers by any law enforcement agency (Request Nos. 4, 49);

(ii)    "Taser policies" recommended by TII to any law enforcement agencies (Request No. 36); and

(iii)    marketing materials sent to law enforcement agencies.

**E.    Documents Previously Produced by Defendant**

As the controversy surrounding Defendant's Taser devices has grown, Defendant has been sued for personal injury and wrongful death in numerous civil actions. In addition, Defendant was investigated by the Securities and Exchange Commission ("SEC") as a result of its marketing claims concerning the safety of Taser devices. As the documents produced in these actions may directly relate to Plaintiff's claims herein, the First Requests seek documents concerning:

(i)    Defendant's production of documents in any action wherein the safety or physiological impact of Taser devices was at issue (Request No. 28); and

(ii)    Defendant's production of documents to the SEC concerning the safety of Tasers (Request No. 29).

**V.    DEFENDANT'S OBJECTIONS TO THE FIRST REQUESTS**

In response to Plaintiff's First Requests, Defendant repeatedly asserted a boilerplate objection that: "TII objects to this Request on the grounds that it is overbroad, unduly burdensome, seeks documents not reasonably calculated to lead to the discovery of admissible evidence." In addition, Defendant routinely stated in its response that it would only produce documents concerning Plaintiff's purchase of Taser devices, ignoring the fact that this action is a putative class action and that Plaintiff is entitled to determine, among other things, the scope of the class (numerosity) and how Defendant sold and warranted its Tasers to the Class as uniformly safe and backed by extensive medical research (commonality, typicality). Despite Plaintiff's allegations that TII sold Taser devices to Plaintiff and the Class that are not uniformly safe, Defendant is arbitrarily refusing to produce any discovery that might relate to class issues. Defendant's dilatory practice of using a

boilerplate objection to virtually every discovery request and its blanket withholding of all class-related discovery are tactics employed to create unnecessary delay in this action.

Moreover, despite stating that it would produce documents responsive to many of the requests referenced herein, it is clear that Defendant has either failed to do so or is producing some documents while withholding additional responsive documents. For example, although Defendant has produced many publicly-available documents and Taser-related documents prepared by third parties, Defendant has not produced one internal TII e-mail. Defendant has not produced any Taser-related notes or draft documents. Defendant has not produced any internal documents that would explain why it suddenly changed its marketing materials on June 28, 2005 to state that repeated use of a Taser could be deadly. There is no doubt that Defendant would not have committed such an about-face without some internal documentation or communication discussing why. It is obvious that Defendant is arbitrarily attempting to limit the scope of discovery and Defendant should not be permitted to evade its discovery obligations.

## VI.    CONCLUSION

For the reasons discussed herein, the Court should grant Plaintiff's motion and order Defendant to produce all documents responsive to the First Requests as described herein.

This 11th day of May 2006.                     **THE VRDOLYAK LAW GROUP, LLC.**

                                               **/s/ John K. Vrdolyak (electronically filed)**
                                               John K. Vrdolyak
                                               Dennis E. Both
                                               741 North Dearborn
                                               Chicago, IL  60610
                                               (312) 482-8200

**LERACH COUGHLIN STOIA GELLER**
**RUDMAN & ROBBINS LLP**
Paul J. Geller (*admitted pro hac vice*)
Robert J. Robbins (*admitted pro hac vice*)
Marisa N. DeMato (*admitted pro hac vice*)
197 S. Federal Highway, Suite 200
Boca Raton, FL  33432-4946
Tel: (561) 750-3000
Fax: (561) 750-3364

**LERACH COUGHLIN STOIA GELLER**
**RUDMAN & ROBBINS LLP**
Robert Rothman
58 S. Service Road, Suite 200
Melville, NY  11747
Tel: (631) 367-7100
Fax: (631) 367-1173

**CAVANAGH & O'HARA**
William K. Cavanagh
407 E. Adams Street
P.O. Box 5043
Springfield, IL  62705
Tel: (217) 544-1771
Fax: (217) 544-9894

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, John K. Vrdolyak, an attorney in this cause, certify that I served a copy of the

foregoing <u>Notice of Motion</u> on the counsel of record, as listed below electronically through the

Court's CM/ECF and/or via email system on May 11, 2006.

John R. Maley
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN  46204-3535

David T. Ballard
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, IL  60606-2833


**THE VRDOLYAK LAW GROUP, LLC.**

<u>**/s/ John K. Vrdolyak (electronically filed)**</u>
John K. Vrdolyak

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| VILLAGE OF DOLTON, on behalf of itself and all others similarly situated, | ) ) ) | Case Number 05-C-4126 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| TASER INTERNATIONAL, INC., a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) ) ) | |

**PLAINTIFF'S FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS TO TASER INTERNATIONAL, INC.**

Plaintiff Village of Dolton ("Plaintiff"), pursuant to Federal Rules of Civil Procedure 26 and 34, on behalf of itself and all others similarly situated, hereby requests that defendant Taser International, Inc. ("Defendant") produce for inspection and copying any and all copies of the documents and things requested herein at the offices of Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 197 South Federal Highway, Suite 200, Boca Raton, Florida 33432, within the time specified in the Rules, or at such other location and date upon which the parties may mutually agree:

**I.      DEFINITIONS**

1.      The term "Taser International" means Taser International, Inc., its present and former divisions, subsidiaries, parents, affiliates, predecessors, successors, and assigns, its present and former officers, directors, partners, employees, agents, consultants, accountants and lawyers, and all

- 1 -

other persons who are acting or who have acted on behalf of, or who are or have been subject to the direction or control of, any of the foregoing.

2.     The terms "you," "your," and "Defendant" mean the recipient hereof,  collectively and individually, you, your parents, subsidiaries, affiliates, predecessor and successor entities, and any of the foregoing's former or present officers, directors, owners, partners, employees, attorneys, agents, representatives, assignees, all other persons occupying similar positions or performing similar functions, or acting or purporting to act on their behalf, and the immediate family members of any individual recipient hereof.

3.     The term "Plaintiff" means Village of Dolton, Illinois.

4.     The term "Dolton P.D." means the Village of Dolton, Illinois Police Department.

5.     The term "Complaint" means the Class Action Complaint filed in the above-captioned case on July 18, 2005.

6.     The term "SEC" means the United States Securities and Exchange Commission and any person, employee, agent or representative acting on its behalf.

7.     The term "SEC filings" means all documents filed or prepared for the purpose of filing with the SEC and any other state or federal regulatory agency, and any drafts thereof or amendments thereto, including, but not limited to, Forms 8-K, 10-K, 10-Q, Schedules 13-D, 14A, 14D-1, and 14D-9.

8.     The term "Financial Statements" includes without limitation balance sheets and statements of income, earnings, retained earnings, sources and applications of funds, operations and deficit, profit and loss, changes in financial position, and cash flows, and also includes all notes to each of the foregoing, and any other notes that pertain to the past, present, or future financial condition of Taser International. Any of the foregoing documents constitutes a Financial Statement

whether it is audited or unaudited, or final, interim, yearly, monthly, pro forma, complete or partial, consolidated or non consolidated, or otherwise.

9.    The term "Taser" means the devices produced by Defendant, as described in the Complaint, Defendant's SEC Filings, and marketing materials, that use compressed nitrogen (or other gas) to shoot electrified probes, stored in a replaceable cartridge attached to the base of the device, that remain connected to the device after shooting by high-voltage insulated wires that transmit electrical pulses that are intended to temporarily overwhelm the normal electrical signals within a body's nerve fibers, impairing subjects' ability to control their bodies or perform coordinated actions.  The term Taser includes, without limitation, the "Air Taser," "Advanced Taser," "M26," "M18," "M18-L," "X26," "X26C."  The term Taser also includes, without limitation, all Taser accessories, cartridges, chargers, batteries, or replacement parts.

10.    The term "document" is used in the broadest possible sense and includes, without limitation, any written or graphic matter or other tangible means of preserving thought or expression, and all tangible things from which information can be processed or transcribed, including the originals, drafts, and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but not limited to, electronic mail (e-mail), correspondence, memoranda, notes, transcribed notes, logs, messages, letters, telegrams, teletype, telefax, bulletins, meetings or other communications, interoffice telephone calls, diaries, chronological data, minutes, books, reports, charts, ledgers, invoices, work sheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, declarations, statements, contracts, canceled checks, transcripts, statistics, surveys, magazine or newspaper articles, releases (and any and all drafts, alterations and modifications, changes and amendments of any of the foregoing), graphic or aural records or representations of any kind, including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings, motion

pictures and electronic, mechanical or electric recordings or representations of any kind (including, without limitation, tapes, cassettes, discs and recordings).

11.    The terms "all" and "each" shall be construed as all and each and shall be construed as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

12.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

13.    The use of the singular form of any word includes the plural and vice versa.

14.    The term "person" is defined as any natural person or any business, legal or governmental entity or association.

15.    The term "communication" means any exchange of information (in the form of facts, ideas, inquiries, or otherwise) by any means of transmission, including, but not limited to, face-to-face conversations, mail, electronic mail (including any attachments), telegram, overnight delivery, telephone, facsimile, or telex.

16.    The terms "concerning" or "evidencing" means relating to, referring to, regarding, describing, or constituting.  Requests for documents "concerning" or "evidencing" any subject matter include documents concerning communications regarding that subject matter.

17.    The term "Master Trainer" means Defendant's certified Taser instructors that you authorize to train law enforcement and corrections agency trainers, end-users or consumers, whether the Master Trainers are employed directly by Defendant or independently organize and promote their own training sessions or teach at training classes arranged by you or otherwise.

18.    The terms "study" or "test" are used in the broadest possible sense and include, without limitation, animal testing, human testing, medical testing, safety testing, or other scientific or

non-scientific testing or review of Taser design, function, performance, or impact on humans or animals.

19.   The term "data" is used in the broadest possible sense and includes, without limitation, preliminary, raw, unreviewed, unedited, final, and/or reviewed information or documents resulting from any study or testing of Tasers, including, but not limited to, all notes, videotapes, CD-Roms, graphical recordings, equipment readings or any other form of measurements.

## II.       INSTRUCTIONS

1.   This request for production is directed to you and covers all information in your possession, custody, or control, including information in the possession of employees, agents, servants, representatives, attorneys, or other persons directly or indirectly employed, retained, or controlled by you or anyone else acting on your behalf or otherwise subject to your control, and any merged, consolidated, or acquired predecessor or successor parent, subsidiary, division, or affiliate of you.

2.   This request for production is continuing in nature.  Pursuant to Fed. R. Civ. P. 26(e)(2), you are required to supplement your responses if you obtain further or different information.  Plaintiff specifically reserves the right to seek supplementary responses to these discovery requests before trial.

3.   Where a claim of privilege or any other objection is asserted as a grounds for not producing any requested document, *furnish a privilege log* that identifies the nature of the privilege (including work product) that is being claimed and the privilege rule being invoked, and for each answer, or portion thereof, that is withheld provide the following information:

(a)   For documents: (i) the type of document; (ii) the date of the document; (iii) the author(s), addressee(s), and recipient(s) of the document (including, without limitation, any indicated or blind copy recipients, and all persons to whom the document was distributed, shown or

- 5 -

explained), and, where not apparent, the relationship of the author(s), addressee(s), and recipient(s) to one another; (iv) the number of pages; (v) the identity of any enclosure(s) or attachment(s); and (vi) the general subject matter of the document; and

(b)    For oral communications: (i) the name of the person making the communication and the names of the persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (ii) the date and place of the communication; and (iii) the general subject matter of the communication.

4.    Where a claim of privilege or any other objection is asserted as a grounds for not producing only part of a document, produce the part(s) to which there is no privilege or objection.

5.    Documents produced in response to any of these discovery requests must be produced as they are kept in the ordinary course of business and must be labeled in such a way as to show which files they came from.

6.    In the event that any document called for by any of these discovery requests has been destroyed, discarded, or is no longer in your possession or subject to your control, that document is to be identified by stating: (i) any addresser and addressee; (ii) any indicated or blind copy recipients; (iii) the document's subject matter, number of pages, and attachments, enclosures, or appendices; (iv) all persons to whom the document was distributed, shown or explained; (v) the date of destruction or discard and the reason for destruction or discard; (vi) the identity of all persons having knowledge of the circumstances of its disposition; and (vii) the identity of all persons having knowledge of the contents thereof.

7.    If you are unable to locate or produce documents in response to a request, state the steps that were taken to locate such documents and the reason(s) why you cannot produce the documents requested.

- 6 -

8.    If any information or data is withheld because such information or data is stored only electronically, it is to be identified by the subject matter of the information or data, the storage mode, and the place or places where such information is maintained.

**III.    TIME PERIOD**

1.    Unless otherwise indicated, all documents requested are those which Defendant prepared, sent, received, or was in possession of during the "Relevant Period," which is from July 1, 2001 to the date of response.

**IV.    DOCUMENT REQUESTS**

1.    Documents concerning Plaintiff or Dolton P.D.

2.    Documents concerning all marketing and advertising materials sent to or presented to any law enforcement agency by Defendant.

3.    Documents concerning all studies performed on the safety, medical impact, or physical performance, *i.e.*, electrical output, of Tasers.

4.    Documents, including contracts, financial agreements, or stock option agreements between Defendant and any law enforcement officials.

5.    Documents concerning the results of all studies, experiments, testing, or other research-related activities for Tasers by Defendant at any time, including, but not limited to, studies by or in connection with Max Nerheim, Wayne McDaniels, Robert Stratbucker, Dr. Geddes, Dr. Roeder, Rick Smith, and/or any third party, regarding Tasers, *including* documents concerning all raw data, notes, videotapes, CD-Roms, graphical recordings, equipment readings or measurements resulting from or created during such research related activities, whether stored electronically or otherwise.

6.    Documents concerning all data relating to the testing by Defendant or by any third party, of Tasers on humans, dogs, pigs, or any other animals.

7.     Documents concerning all data, tests, and studies, relating to the testing of Tasers on pigs at the St. Claire research facility in Missouri.

8.     Documents concerning all data, tests, and studies, relating to the testing of Tasers on pigs in Phoenix, Arizona at any facility, including, but not limited to, a horse facility or on the property of Max Nerheim.

9.     Documents concerning any data, tests, and studies, whether raw or completed, sent by Defendant to any third party or received by Defendant from any third party concerning the safety, performance or medical profile of Tasers.

10.     Documents concerning any presentations or demonstrations by Defendant to any third party concerning the safety or performance of Tasers.

11.     Documents concerning any involvement, financial or otherwise, by Defendant in any third-party testing of Tasers.

12.     Documents concerning the types of anesthesia used during any test or study of Tasers on animals.

13.     Documents concerning the impact of Tasers on the human body, including, but not limited to, Tasers' impact on respiratory function, cardiovascular function and the central nervous system.

14.     Documents concerning any testing or data produced at any time concerning measurements taken from a human or animal by an electrocardiogram or "EKG" immediately prior to, simultaneous with or following the use/application of a Taser.

15.     Documents concerning whether the use of a Taser can or may cause short-term or long-term health consequences in humans or animals.

16.     Documents concerning the electrical output, pulse length, pulse width, frequency, joules per pulse, pulses per second, current, voltage, amperage, amperes or milliamps root mean square, strength duration curves, and waveform caused by or produced by Tasers.

17.     Documents concerning any reports, informal, formal or otherwise, made to Taser by any person, entity, or agency, concerning injuries allegedly resulting from use of a Taser.

18.     Documents concerning whether the pulse rate of Tasers becomes variable at any time.

19.     Documents concerning the safety of Tasers.

20.     Documents produced or reviewed by Defendant's Medical Advisory Board, Genesis 12 Engineering, or any other third party regarding the safety or electrical output of Tasers.

21.     Documents concerning the mathematical formulas used by Defendant at any time to measure the electrical output, performance, or safety of Tasers.

22.     Documents concerning Taser's performance or safety maintained by Defendant's Communications, Strategic Development, and/or Research and Development Departments.

23.     Documents concerning all protocols submitted to any regulatory body or third party for the approval of proposed Taser testing.

24.     Documents concerning all communications between Defendant and Professor John Webster of the University of Wisconsin-Madison, as well as communications between defendant and any third party concerning Professor Webster or his research.

25.     Documents concerning Dr. Robert Stratbucker's removal or resignation from any study of Tasers sponsored or conducted by the University of Wisconsin-Madison.

26.     Documents concerning all lesson plans for Tasers or Taser training produced by you at any time, as well as documents, notes, and other materials related to the formulation of such plans.

27.     Documents concerning instructions for the use of Tasers, including, but not limited to, instruction manuals and training materials.

28.    Documents produced by Defendant in any litigation, arbitration, mediation, or administrative proceeding in which the safety or physiological impact of Tasers was at issue.

29.    Documents produced by you to the SEC, in response to any investigation of you, concerning the safety of Tasers.

30.    Documents concerning all marketing materials produced by Defendant during the Relevant Period, as well as documents, notes, and other materials related to the formulation of such plans.

31.    Documents concerning all data generated from an April 2005 Taser conference where law enforcement officers were shocked with a Taser, including documents concerning the location of the probes on such officers, any measurements taken by EKG, and any blood sample test results.

32.    Documents concerning any agreements or contracts with any third party (*i.e.*, consultants, advisors, or testing laboratories) concerning Taser safety, medical testing, design, or analysis.

33.    Documents concerning any involvement by you or any of your representatives in any third-party study of Tasers including, but not limited to, the United States Department of Defense Human Effects Center of Excellence report on Human Effectiveness and Rise Characterization of Electromuscular Incapacitation Devices or the June 2005 report from the Office of the Police Complaint Commissioner of British Columbia, Canada.

34.    Documents concerning any communications, data or studies provided by you to the United States Department of Defense Human Effects Center of Excellence for its report on Human Effectiveness and Rise Characterization of Electromuscular Incapacitation Devices.

35.    Documents provided by Taser to any third party regarding use of force or the "use of force continuum."

36.    Documents concerning any "Taser policies" recommended by you to any law enforcement agencies or third parties.

37.    Documents concerning "excited delirium."

38.    Documents concerning any and all studies, as well as advertising, marketing, and training materials, and documents concerning the preparation of such studies and materials, concerning the efficacy and desirability of Tasers as a method for the restraint and control individuals in the state of "excited delirium," including but not limited to those individuals in such state as a result of the use of drugs including but not limited to cocaine, methamphetamine, and PCP.

39.    Documents concerning "in-custody deaths" following application or use of a Taser, including any communications between you and any third party, and documents concerning any investigation by you or any other person or entity concerning such death.

40.    Documents concerning injuries following application or use of a Taser, including any communications between you and any third party, and documents concerning any investigation by you or any other person or entity concerning such injury.

41.    Documents concerning any communications, agreements, or payments between you and the Institute for the Prevention of In -Custody Deaths, Inc., or any employee or representative thereof.

42.    Documents concerning any involvement, ownership, or association by you, whether financial or otherwise, with the Institute for the Prevention of In -Custody Deaths, Inc.

43.    Documents concerning any communications, agreements, or payments between you and Force Science Research Center, UMN-Mankato, and Force Science LLC, or any employee or representative thereof.

44.    Documents concerning any involvement, ownership, or association by you, whether financial or otherwise, with Force Science Research Center, UMN-Mankato, and Force Science LLC.

45.    Documents concerning any communications, agreements, or payments between you and Americans for Effective Law Enforcement, Inc., or any employee or representative thereof.

46.    Documents concerning any involvement, ownership, or association by you, whether financial or otherwise, with Americans for Effective Law Enforcement, Inc.

47.    Documents concerning Tasers and incidents in humans or animals of ventricular fibrillation, acidosis, high Troponin T levels, cardiac arrhythmia, impairment of respiration, metabolic muscle damage (rhabdomyolysis), respiratory failure, or seizure induction.

48.    Documents concerning the identity and location of all municipalities, cities, agencies, law enforcement or corrections departments, or other similarly situated entities that have purchased Tasers from you.

49.    Documents concerning all contracts, agreements, purchase orders or other documents evidencing the purchase of Tasers by any law enforcement agency.

50.    Documents concerning any communications between Defendant and any medical health professional, *i.e.*, medical examiners, coroners, or others, regarding whether use of a Taser may have resulted in, contributed to, or was a factor in a human death or injury.

51.    Documents concerning any autopsy reports, preliminary reports, or internal communications or external communications between you and any third party, including, but not limited to any medical health professional, *i.e.*, medical examiners or coroners, or any law enforcement officers, government, or municipal employees or representatives, concerning incidents of death that followed use of a Taser.

52.    All documents and communications concerning:

- 12 -

| Name | Approx. Age | Approx. Date of Death | Location |
|---|---|---|---|
| David Flores | 37 | 9/28/1999 | Fairfield, California |
| Enrique Juarez Ochoa | 34 | 5/14/2000 | Bakersfield, California |
| Mark Burkett | 18 | 6/17/2001 | Gainesville, Florida |
| Hannah Rogers-Grippi | 6-month-old fetus | 12/15/2001 | Chula Vista, California |
| Marvin Hendrix | 27 | 12/17/2001 | Hamilton, Ohio |
| Steven Vasquez | 40 | 12/21/2001 | Ft. Lauderdale, Florida |
| Vincent Del'Ostia | 31 | 1/27/2002 | Hollywood, Florida |
| Anthony Spencer | 35 | 2/12/2002 | Philadelphia, Pennsylvania |
| Henry W. Canady | 46 | 3/27/2002 | Hilliard, Florida |
| Richard Baralla | 36 | 5/17/2002 | Pueblo, Colorado |
| Eddie R. Alvarado | 32 | 6/10/2002 | Los Angeles, California |
| Jason Nichols | 21 | 6/15/2002 | Oklahoma City, Oklahoma |
| Fermin Rincon | 24 | 6/27/2002 | Fontana, California |
| Clever Craig | 46 | 6/28/2002 | Mobile, Alabama |
| Unknown Male | 39 | 6/2002 | Phoenix, Arizona |
| Johnny Lozoya | Unknown | 7/19/2002 | Gardena, California |
| Gordon R. Jones | 37 | 7/19/2002 | Windermere, Florida |
| Frederick Webber | 44 | 9/1/2002 | Orange City, Florida |
| Stephen Edwards | 59 | 11/7/2002 | Shelton, Washington |
| Unknown Male | 31 | 3/16/2003 | Albuquerque, New Mexico |
| Terrance Hanna | 51 | 4/19/2003 | Burnaby, B.C., Canada |
| Joshua Hollander | 22 | 5/10/2003 | Normal Heights, California |

| | | | |
|---|---|---|---|
| Timothy Sleet | 44 | 6/9/2003 | Springfield, Missouri |
| Clay Willey | 33 | 6/22/2003 | Prince George, B.C., Canada |
| Troy Nowell | 51 | 8/4/2003 | Amarillo, Texas |
| Walter C. Burks | 36 | 8/7/2003 | Minneapolis, Minnesota |
| John Thompson | 45 | 8/8/2003 | Carrolton Township, Michigan |
| Gordon Rauch | 39 | 8/17/2003 | Citrus Heights, California |
| Ray Austin | 25 | 9/24/2003 | Gwinnett, Georgia |
| Richard Glenn Leyba | 37 | 9/29/2003 | Glendale, Colorado |
| Clark E. Whitehouse | 34 | 9/2003 | Whitehorse, Yukon, Canada |
| Roman G. Pierson | 40 | 10/7/2003 | Brea, California |
| Dennis Hammond | 31 | 10/11/2003 | Oklahoma City, Oklahoma |
| Louis Morris | 50 | 10/21/2003 | Orlando, Florida |
| James L. Borden | 47 | 11/6/2003 | Monroe County, Indiana |
| Michael S. Johnson | 32 | 11/10/2003 | Oklahoma City, Oklahoma |
| Kerry K. O'Brien | 31 | 11/11/2003 | Pembroke Pines, Florida |
| Curtis Lawson | 40 | 12/9/2003 | Unadilla, Georgia |
| Lewis S. King | 39 | 12/9/2003 | St. Augustine, Florida |
| David Glowczenski | 35 | 2/4/2004 | Southampton Village, N.Y. |
| Raymond L. Siegler | 40 | 2/12/2004 | Minneapolis, Minnesota |
| Curt Rosentangle | 44 | 2/21/2004 | Silverdale, Washington |
| William Lomax | 26 | 2/21/2004 | Las Vegas, Nevada |
| Perry Ronald | 28 | 3/23/2004 | Edmonton, Alberta, Canada |
| Terry L. Williams | 45 | 3/28/2004 | Madison, Illinois |

- 14 -

| | | | |
|---|---|---|---|
| Phillip LaBlanc | 36 | 4/1/2005 | Los Angeles, California |
| Melvin Samuel | 28 | 4/16/2004 | Savannah, Georgia |
| Alfredo Diaz | 29 | 4/18/2004 | Orange County, Florida |
| Eric Wolle | 45 | 4/27/2004 | Washington Grove, Maryland |
| Roman Andreichikov | Unknown | 5/1/2004 | Vancouver, B.C., Canada |
| Peter Lamonday | 38 | 5/13/2004 | London, Ontario, Canada |
| Henry J. Lattarulo | 40 | 5/22/2004 | Hillsborough County, Florida |
| Frederick J. Williams | 31 | 5/27/2004 | Gwinnet County, Georgia |
| Darryl L. Smith | 46 | 5/30/2004 | Atlanta, Georgia |
| Anthony C. Oliver | 42 | 5/31/2004 | Orlando, Florida |
| Jerry Pickens | 55 | 6/4/2004 | Bridge City, Louisiana |
| James A. Cobb | 42 | 6/9/2004 | St. Paul, Minnesota |
| Jacob J. Lair | 29 | 6/9/2004 | Sparks, Nevada |
| Robert Bagnell | 44 | 6/23/2004 | Vancouver, B.C., Canada |
| Kris J. Lieberman | 32 | 6/24/2004 | Bushkill Twp., Pennsylvania |
| Eric B. Christmas | 36 | 6/2004 | Dayton, Ohio |
| Demetrius T. Nelson | 45 | 7/3/2004 | Okaloosa County, Florida |
| Willie Smith | 48 | 7/11/2004 | Auburn, Washington |
| Jerry Knight | 29 | 7/14/2004 | Mississauga, Ontario, Canada |
| Milton Salazar | 29 | 7/23/2004 | Mesa, Arizona |
| Keith Tucker | 47 | 8/2/2004 | Las Vegas, Nevada |
| Samuel Truscott | 43 | 8/8/2004 | Kingston, Ontario, Canada |
| Ernest Blackwell | 29 | 8/11/2004 | St. Louis, Missouri |

| David Riley | 41 | 8/11/2004 | Joplin, Missouri |
|---|---|---|---|
| Anthony L. McDonald | 46 | 8/13/2004 | Harrisburg, North Carolina |
| William Teasley | 31 | 8/16/2004 | Anderson, South Carolina |
| Richard Karlo | 44 | 8/19/2004 | Denver, Colorado |
| Michael L. Sanders | 40 | 8/20/2004 | Fresno, California |
| Lawrence Davis | 27 | 8/24/2004 | Phoenix, Arizona |
| Jason Yeagley | 32 | 8/27/2004 | Winter Haven, Florida |
| Michael R. Rosa | 38 | 8/29/2004 | Del Rey Oaks, California |
| Samuel Wakefield | 22 | 9/12/2004 | Rio Vista, Texas |
| Andrew Washington | 21 | 9/15/2004 | Vallejo, California |
| Jon Merkle | 40 | 9/20/2004 | Miami, Florida |
| Dwayne A. Dunn | 33 | 10/4/2004 | Lafayette, Louisiana |
| Greshmond Gray | 25 | 11/2/2004 | LaGrange, Georgia |
| Robert Guerrero | 21 | 11/2/2004 | Fort Worth, Texas |
| Keith Raymond Drum | Unknown | 11/7/2004 | Clearlake, California |
| Ricardo Zaragoza | 40 | 11/8/2004 | Elk Grove, California |
| Charles Keiser | 47 | 11/25/2004 | Hartland Township, Michigan |
| Byron Black | 39 | 11/27/2004 | Lee County, Florida |
| Patrick Fleming | 35 | 12/4/2004 | Metairie, Louisiana |
| Kevin Downing | 36 | 12/15/2004 | Hollywood, Florida |
| Douglas Meldrum | 37 | 12/17/2004 | Wasatch County, Utah |
| Lyle Nelson | 35 | 12/17/2004 | Columbia, Illinois |
| Timothy Bolander | 31 | 12/23/2004 | Delray Beach, Florida |

| | | | |
|---|---|---|---|
| Ronnie Pino | 31 | 12/23/2004 | Sacramento, California |
| Christopher Hernandez | 19 | 12/28/2004 | Naples, Florida |
| Jeanne Hamilton | 46 | 12/29/2004 | Palmdale, California |
| David Cooper | 40 | 12/30/2004 | Marion County, Indiana |
| Gregory Saulsbury | 30 | 1/2/2005 | Pacifica, California |
| Dennis Hyde | 30 | 1/5/2005 | Akron, Ohio |
| Carl Trotter | 33 | 1/8/2005 | Pensacola, Florida |
| Unknown Man | Unknown | 1/28/2005 | Chickasha, Oklahoma |
| Jeffrey Turner | 41 | 1/31/2005 | Lucas County, Ohio |
| Ronald Alan Hasse | 54 | 2/10/2005 | Chicago, Illinois |
| Robert Camba | 45 | 2/12/2005 | San Diego, California |
| Joel D. Casey | 52 | 2/18/2005 | Houston, Texas |
| Robert Heston | 40 | 2/20/2005 | Salinas, California |
| Shirley Andrews | 38 | 3/3/2005 | Cincinnati, Ohio |
| Willie Towns | 30 | 3/6/2005 | Deland, Florida |
| Milton Woolfolk | 39 | 3/12/2005 | Lake City, Florida |
| Mark Young | 25 | 3/17/2005 | Indianapolis, Indiana |
| James Wathan, Jr. | 32 | 4/3/2005 | Delhi, California |
| Eric Hammock | 43 | 4/3/2005 | Fort Worth, Texas |
| Ricky Barber | 46 | 4/8/2005 | Carter County, Oklahoma |
| John Cox | 39 | 4/22/2005 | Bellport, New York |
| Keith Graff | 24 | 5/3/2005 | Phoenix, Arizona |
| Kevin Geldart | 34 | 5/5/2005 | Moncton, N.Brunswick, Canada |

| Stanley Wilson | 44 | 5/6/2005 | Miami, Florida |
|---|---|---|---|
| Lawrence Berry | 33 | 5/6/2005 | Jefferson Parish, Louisiana |
| Vernon Young | 31 | 5/13/2005 | Union Township, Ohio |
| Leroy Pierson | 55 | 5/17/2005 | Rancho Cucamonga, Calif. |
| Randy Martinez | 40 | 5/20/2005 | Albuquerque, New Mexico |
| Lee Marvin Kimmel | 38 | 5/23/2005 | Reading, Pennsylvania |
| Richard Alverado | 38 | 5/23/2005 | Tustin, California |
| Walter L. Seats | 23 | 5/26/2005 | Nashville, Tennessee |
| Nazario Solorio | 38 | 6/2/2005 | Escondido, California |
| Unknown Man | 33 | 6/4/2005 | Sacramento, California |
| Russell Walker | 47 | 6/6/2005 | Las Vegas, Nevada |
| Horace Owens | 48 | 6/11/2005 | Ft. Lauderdale, Florida |
| Michael A. Edwards | 32 | 6/13/2005 | Palatka, Florida |
| Carolyn Daniels | 25 | 6/24/2005 | Fort Worth, Texas |
| Unknown Man | Unknown | 6/29/2005 | Miami, Florida |
| Gurmeet Sandhu | 41 | 6/30/2005 | Surrey, B.C., Canada |
| Rockey Bryson | 41 | 6/7/2005 | Birmingham, Alabama |
| Kevin Omas | 17 | 6/12/2005 | Eulees, Texas |
| Unknown Man | Unknown | 6/15/2005 | Phoenix, Arizona |
| Michael Crutchfield | 40 | 7/2005 | West Palm Beach, Florida |

53.     Documents concerning any payments by Defendant to any government officials, such as Phoenix, Arizona Law and Public Safety Committee Chairman Dave Siebert, that have been used by Taser to make sales presentations for or to promote the use of Tasers.

- 18 -

54.    Documents concerning any Taser International stock options granted or stock given to any active law enforcement or government officials at any time.

55.    Documents concerning all studies, tests, communications, information, or data, whether final or preliminary, concerning your statement in your "Explanation of Changes to Taser International, Inc.'s Training CD Version 12.0 November 2004" that Tasers would be "referred to as 'non-lethal'" as opposed to "less-lethal."

56.    Documents concerning all studies, tests, communications, information, data, whether final or preliminary, supporting or contradicting your statement in your June 28, 2005 "Training Bulletin" that "[r]epeated, prolonged, and/or continuous exposure(s) to the TASER electrical discharge may cause strong muscle contractions that impair breathing and respiration, particularly when the probes are placed across the chest or diaphragm."

57.    Documents concerning all studies, tests, communications, information, data, whether final or preliminary, supporting or contradicting your statement in your June 28, 2005 "Training Bulletin" that "[u]sers should avoid prolonged, extended, uninterrupted discharges or extensive multiple discharges whenever practicable in order to minimize the potential for over-exertion of the subject or potential impairment of full ability to breathe over a protracted time period."

58.    Documents concerning all studies, tests, communications, information, data, whether final or preliminary, supporting or contradicting your statement in your June 28, 2005 "Training Bulletin" that "[e]xcited delirium is a potentially fatal condition caused by a complex set of physiological conditions including over-exertion of the subject and inability for sufficient respiration to maintain normal blood chemistry."

59.    Documents concerning all studies, tests, communications, information, data, whether final or preliminary, supporting or contradicting your statement in your June 28, 2005 "Training

Bulletin" that "[excited delirium] subjects are at significant and potentially fatal health risks from further prolonged exertion and/or impaired breathing."

60.    Documents concerning all studies, tests, communications, information, data, whether final or preliminary, supporting or contradicting your statement in your June 28, 2005 "Training Bulletin" that "[t]he user should attempt to minimize the uninterrupted duration and total number of TASER device applications."

61.    Documents concerning all studies, tests, communications, information, data, whether final or preliminary, supporting or contradicting your statement in your June 28, 2005 "Training Bulletin" that "extensive field use data, scientific, and other medical research and evidence supports that TASER devises generally do not cause lasting aftereffects or fatalities . . ."

62.    Documents concerning all studies, tests, communications, information, data, whether final or preliminary, supporting or contradicting your statement in your June 28, 2005 "Training Bulletin" that "the use of a TASER device upon a person or animal may be stressful and contribute to exertion or exhaustion, including injury or death caused by an individual's exhaustion or over-exertion" and that "[r]epeated, prolonged, and/or continuous TASER device exposure(s) may contribute to or cause cumulative exertion or exhaustion results or effects."

63.    Documents concerning your decision to "supersede all prior warnings for TASER devices" with your June 28, 2005 "Training Bulletin."

64.    Documents concerning all members of your Scientific and Medical Advisory Board, including but not limited to, professional resumes and curriculum vitae.

65.    Documents concerning all studies, tests, communications, information, and data, conducted on Tasers by members of your Scientific and Medical Advisory Board.

66.    Documents concerning all meetings held by your Scientific and Medical Advisory Board.

67.   Documents evidencing the structure of your Scientific and Medical Advisory Board.

68.   Documents concerning any agreements or contracts with any third party for the distribution and sale of Tasers, including but not limited to the distribution of promotional and marketing materials and training guidelines.

69.   Documents concerning any agreements or contracts with any third party for the training of law enforcement officers in connection with the use of Tasers.

70.   Documents concerning any and all injuries or deaths reported to Taser International in connection with or following the use of Tasers.

71.   Documents concerning any lawsuit in which Taser International has been sued for personal injury or wrongful death in connection with Tasers.

72.   Documents concerning any and all communications between Taser International and Ronald Burge, former Chief of Police for the Village of Dolton.

73.   Documents concerning the October 5, 2005, Declaration of Ronald Burge, former Chief of Police for the Village of Dolton.

74.   Documents concerning all communications with the Attorney General's office for the State of Arizona concerning your marketing, promotion, or sales of Tasers.

75.   Documents concerning all injuries to law enforcement or corrections officers during Taser training.

76.   Documents concerning all communications with Dr. Cyril Wecht.

77.   Documents concerning all reports provided by Dr. Cyril Wecht to you concerning Taser.

78.   Documents concerning any and all communications with Palestine, Illinois Police Chief James L. Clark.

79.   Documents identified or referred to in Defendant's Rule 26(a) Initial Disclosures.

- 21 -

80.    Documents concerning Tasers authored by any potential expert witnesses identified in Defendant's Rule 26(a) Initial Disclosures.

81.    Documents concerning any correspondence between Defendant and any potential expert witnesses identified in Defendant's Rule 26(a) Initial Disclosures.

This *12th* day of January 2006.

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP

*Robert J. Robbins*

Paul J. Geller (*admitted pro hac vice*)
Robert J. Robbins (*admitted pro hac vice*)
Marisa N. DeMato (*admitted pro hac vice*)
197 S. Federal Highway, Suite 200
Boca Raton, FL  33432-4946
Tel: (561) 750-3000
Fax: (561) 750-3364

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
Robert Rothman
58 South Service Road, Suite 200
Melville, NY  11747
Tel: (631) 367-7100
Fax: (631) 367-1173

VRDOLYAK LAW GROUP
John Vrdolyak
741 North Dearborn
Chicago, IL  60610
(312) 482-8200

CAVANAGH & O'HARA
William K. Cavanagh
407 East Adams Street
P.O. Box 5043
Springfield, IL  62705
Tel: (217) 544-1771
Fax: (217) 544-9894

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by FedEx

on the attorneys listed below this _12_ th day of January, 2006:

| | |
|---|---|
| John R. Maley<br>Barnes & Thornburg LLP<br>11 South Meridian Street<br>Indianapolis, IN 46204-3535 | |
| David T. Ballard<br>Barnes & Thornburg LLP<br>Suite 4400<br>One North Wacker Drive<br>Chicago, Illinois 60606-2833 | |

*Robert J. Robbins*
Robert J. Robbins

- 23 -

# EXHIBIT "B"

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VILLAGE OF DOLTON, on behalf of itself and all others similarly situated, | ) ) ) ) | Case Number: 05-C-4126 |
| Plaintiff, | ) ) | JUDGE HOLDERMAN |
| vs. | ) ) | MAGISTRATE JUDGE KEYS |
| TASER INTERNATIONAL, INC., a Delaware corporation, | ) ) ) | |
| Defendant. | ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant, TASER International, Inc. ("TII"), by counsel, hereby responds to Plaintiff's

First Request for Production of Documents to TII ("Document Requests") as follows:

## DOCUMENT REQUESTS

**REQUEST NO. 1:**     Documents concerning Plaintiff or Dolton P.D.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly

burdensome, and seeks documents not reasonably calculated to lead to the discovery of

admissible evidence. Without waiving these objections, TII states that it will produce responsive

documents relating to Plaintiff or Dolton P.D.

**REQUEST NO. 2:**     Documents concerning all marketing and advertising materials

sent to or presented to any law enforcement agency by Defendant.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce marketing and advertising materials sent to Plaintiff and marketing materials in TII's possession that existed at the time of Plaintiff's purchase of TASER® electronic control device.[1]

**REQUEST NO. 3:**    Documents concerning all studies performed on the safety, medical impact, or physical performance, *i.e.*, electrical output, of Tasers.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff regarding X26® TASER electronic control devices, as was purchased by Plaintiff.[2]

**REQUEST NO. 4:**    Documents, including contracts, financial agreements, or stock option agreements between Defendant and any law enforcement officials.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, seeks documents not reasonably calculated to lead to the discovery of admissible evidence. TII further objects to this Request on the grounds that it seeks irrelevant information.

---

[1] "TASER" is a trademark of TII.

[2] X26 is a trademark of TII.

**REQUEST NO. 5:** Documents concerning the results of all studies, experiments, testing, or other research-related activities for Tasers by Defendant at any time, including, but not limited to, studies by or in connection with Max Nerheim, Wayne McDaniels, Robert Stratbucker, Dr. Geddes, Dr. Roeder, Rick Smith, and/or any third party, regarding TIIs, *including* documents concerning all raw data, notes, videotapes, CD-Roms, graphical recordings, equipment readings or measurements resulting from or created during such research related activities, whether stored electronically or otherwise.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents relating to the X26 TASER electronic control device, as was purchased by Plaintiff.

**REQUEST NO. 6:** Documents concerning all data relating to the testing by Defendant or by any third party, of Tasers on humans, dogs, pigs, or any other animals.

**RESPONSE:** See TII's objections and response to Requests Nos. 3 and 5.

**REQUEST NO. 7:** Documents concerning all data, tests, and studies, relating to the testing of Tasers on pigs at the St. Claire research facility in Missouri.

**RESPONSE:** See TII's objections and response to Requests Nos. 3 and 5.

**REQUEST NO. 8:** Documents concerning all data, tests, and studies, relating to the testing of Tasers on pigs in Phoenix, Arizona at any facility, including, but not limited to, a horse facility or on the property of Max Nerheim.

3

**RESPONSE:** See TII's objections and response to Requests Nos. 3 and 5.

**REQUEST NO. 9:**      Documents concerning any data, tests, and studies, whether raw or completed, sent by Defendant to any third party or received by Defendant from any third party concerning the safety, performance or medical profile of Tasers.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff regarding X26® TASER electronic control devices, as was purchased by Plaintiff.

**REQUEST NO. 10:**      Documents concerning any presentations or demonstrations by Defendant to any third party concerning the safety or performance of Tasers.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents regarding any presentations or demonstrations by TII to Plaintiff, if any exist.

**REQUEST NO. 11:**      Documents concerning any involvement, financial or otherwise, by Defendant in any third-party testing of Tasers.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

4

**REQUEST NO. 12:**     Documents concerning the types of anesthesia used during any test or study of Tasers on animals.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 13:**     Documents concerning the impact of Tasers on the human body, including, but not limited to, Tasers' impact on respiratory function, cardiovascular function and the central nervous system.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 14:**     Documents concerning any testing or data produced at any time concerning measurements taken from a human or animal by an electrocardiogram or "EKG" immediately prior to, simultaneous with or following the use/application of a Tasers.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 15:**    Documents concerning whether the use of a Tasers can or may cause short-term or long-term health consequences in humans or animals.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 16:**    Documents concerning the electrical output, pulse length, pulse width, frequency, joules per pulse, pulses per second, current, voltage, amperage, amperes or milliamps root mean square, strength duration curves, and waveform caused by or produced by Tasers.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 17:**    Documents concerning any reports, informal, formal or otherwise, made to Taser by any person, entity, or agency, concerning injuries allegedly resulting from use of a Taser.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 18:**    Documents concerning whether the pulse rate of Tasers becomes variable at any time.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 19:**    Documents concerning the safety of Tasers.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 20:**    Documents produced or reviewed by Defendant's Medical Advisory Board, Genesis 12 Engineering, or any other third party regarding the safety or electrical output of Tasers.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. TII additionally objects on the grounds that it does not control or have in its possession any documents produced or reviewed by third parties. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 21:**    Documents concerning the mathematical formulas used by Defendant at any time to measure the electrical output, performance, or safety of Tasers.

7

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 22:**    Documents concerning Taser's performance or safety maintained by Defendant's Communications, Strategic Development, and/or Research and Development Departments.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff after entry of an Agreed Protective Order.

**REQUEST NO. 23:**    Documents concerning all protocols submitted to any regulatory body or third party for the approval of proposed Taser testing.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. TII further objects on the grounds that the term "protocols" is vague and ambiguous.

**REQUEST NO. 24:**    Documents concerning all communications between Defendant and Professor John Webster of the University of Wisconsin-Madison, as well as communications between defendant and any third party concerning Professor Webster or his research.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 25:**    Documents concerning Dr. Robert Stratbucker's removal or resignation from any study of Tasers sponsored or conducted by the University of Wisconsin-Madison.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 26:**    Documents concerning all lesson plans for Tasers or Taser training produced by you at any time, as well as documents, notes, and other materials related to the formulation of such plans.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, TII states that it will produce documents responsive to this request that relate to lesson plans that were used by Plaintiff.

**REQUEST NO. 27:**    Documents concerning instructions for the use of Tasers, including, but not limited to, instruction manuals and training materials.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of

admissible evidence. Without waiving this objection, TII states that it will produce responsive documents concerning instructions for the use of the X26 that were issued to Plaintiff.

**REQUEST NO. 28:** Documents produced by Defendant in any litigation, arbitration, mediation, or administrative proceeding in which the safety or physiological impact of Tasers was at issue.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 29:** Documents produced by you to the SEC, in response to any investigation of you, concerning the safety of Tasers.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 30:** Documents concerning all marketing materials produced by Defendant during the Relevant Period, as well as documents, notes, and other materials related to the formulation of such plans.

**RESPONSE:** See TII's objections and response to Request No. 2.

**REQUEST NO. 31:** Documents concerning all data generated from an April 2005 Taser conference where law enforcement officers were shocked with a Taser, including

documents concerning the location of the probes on such officers, any measurements taken by EKG, and any blood sample test results.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 32:**    Documents concerning any agreements or contracts with any third party (*i.e.*, consultants, advisors, or testing laboratories) concerning Taser safety, medical testing, design, or analysis.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 33:**    Documents concerning any involvement by you or any of your representatives in any third-party study of Tasers including, but not limited to, the United States Department of Defense Human Effects Center of Excellence report on Human Effectiveness and Rise Characterization of Electromuscular Incapacitation Devices or the June 2005 report from the Office of the Police Complaint Commissioner of British Columbia, Canada.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents related to the reports.

**REQUEST NO. 34:**    Documents concerning any communications, data or studies provided by you to the United States Department of Defense Human Effects Center of Excellence for its report on Human Effectiveness and Rise Characterization of Electromuscular Incapacitation Devices.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents.

**REQUEST NO. 35:**    Documents provided by Taser to any third party regarding use of force or the "use of force continuum."

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents concerning any documents provided to Plaintiff.

**REQUEST NO. 36:**    Documents concerning any "Taser policies" recommended by you to any law enforcement agencies or third parties.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents concerning any policies recommended to Plaintiff.

12

**REQUEST NO. 37:**    Documents concerning "excited delirium."

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 38:**    Documents concerning any and all studies, as well as advertising, marketing, and training materials, and documents concerning the preparation of such studies and materials, concerning the efficacy and desirability of Tasers as a method for the restraint and control individuals in the state of "excited delirium," including but not limited to those individuals in such state as a result of the use of drugs including but not limited to cocaine, methamphetamine, and PCP.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 39:**    Documents concerning "in-custody deaths" following application or use of a Taser, including any communications between you and any third party, and documents concerning any investigation by you or any other person or entity concerning such death.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of

admissible evidence. TII further objects on the grounds that it is not in control or in possession of documents concerning an investigation by "any other person or entity." Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 40:**    Documents concerning injuries following application or use of a Taser, including any communications between you and any third party, and documents concerning any investigation by you or any other person or entity concerning such injury.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. TII further objects on the grounds that it is not in control or in possession of documents concerning an investigation by "any other person or entity."

**REQUEST NO. 41:**    Documents concerning any communications, agreements, or payments between you and the Institute for the Prevention of In -Custody Deaths, Inc., or any employee or representative thereof.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 42:**    Documents concerning any involvement, ownership, or association by you, whether financial or otherwise, with the Institute for the Prevention of In -Custody Deaths, Inc.

14

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 43:**     Documents concerning any communications, agreements, or payments between you and Force Science Research Center, UMN-Mankato, and Force Science LLC, or any employee or representative thereof.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 44:**     Documents concerning any involvement, ownership, or association by you, whether financial or otherwise, with Force Science Research Center, UMN-Mankato, and Force Science LLC.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 45:**     Documents concerning any communications, agreements, or payments between you and Americans for Effective Law Enforcement, Inc., or any employee or representative thereof.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 46:**    Documents concerning any involvement, ownership, or association by you, whether financial or otherwise, with Americans for Effective Law Enforcement, Inc.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 47:**    Documents concerning Tasers and incidents in humans or animals of ventricular fibrillation, acidosis, high Troponin T levels, cardiac arrhythmia, impairment of respiration, metabolic muscle damage (rhabdomyolysis), respiratory failure, or seizure induction.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving these objections, TII states that it will produce responsive documents relating to Plaintiff.

**REQUEST NO. 48:**    Documents concerning the identity and location of all municipalities, cities, agencies, law enforcement or corrections departments, or other similarly situated entities that have purchased Tasers from you.

16

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 49:**    Documents concerning all contracts, agreements, purchase orders or other documents evidencing the purchase of Tasers by any law enforcement agency.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 50:**    Documents concerning any communications between Defendant and any medical health professional, *i.e.*, medical examiners, coroners, or others, regarding whether use of a Taser may have resulted in, contributed to, or was a factor in a human death or injury.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents relating to Plaintiff, if any exist.

**REQUEST NO. 51:**    Documents concerning any autopsy reports, preliminary reports, or internal communications or external communications between you and any third party, including, but not limited to any medical health professional, *i.e.*, medical examiners or

coroners, or any law enforcement officers, government, or municipal employees or representatives, concerning incidents of death that followed use of a Taser.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents relating to Plaintiff, if any exist.

**REQUEST NO. 52:**    All documents and communications concerning:

| Name | Approx. Age | Approx. Date of Death | Location |
|------|-------------|-----------------------|----------|
| David Flores | 37 | 9/28/1999 | Fairfield, California |
| Enrique Juarez Ochoa | 34 | 5/14/2000 | Bakersfield, California |
| Mark Burkett | 18 | 6/17/2001 | Gainesville, Florida |
| Hannah Rogers-Grippi | 6-month-old fetus | 12/15/2001 | Chula Vista, California |
| Marvin Hendrix | 27 | 12/17/2001 | Hamilton, Ohio |
| Steven Vasquez | 40 | 12/21/2001 | Ft. Lauderdale, Florida |
| Vincent Del'Ostia | 31 | 1/27/2002 | Hollywood, Florida |
| Anthony Spencer | 35 | 2/12/2002 | Philadelphia, Pennsylvania |
| Henry W. Canady | 46 | 3/27/2002 | Hilliard, Florida |
| Richard Baralla | 36 | 5/17/2002 | Pueblo, Colorado |
| Eddie R. Alvarado | 32 | 6/10/2002 | Los Angeles, California |
| Jason Nichols | 21 | 6/15/2002 | Oklahoma City, Oklahoma |
| Fermin Rincon | 24 | 6/27/2002 | Fontana, California |
| Clever Craig | 46 | 6/28/2002 | Mobile, Alabama |
| Unknown Male | 39 | 6/2002 | Phoenix, Arizona |
| Johnny Lozoya | Unknown | 7/19/2002 | Gardena, California |
| Gordon R. Jones | 37 | 7/19/2002 | Windermere, Florida |

| Name | Approx. Age | Approx. Date of Death | Location |
|------|-------------|----------------------|----------|
| Frederick Webber | 44 | 9/1/2002 | Orange City, Florida |
| Stephen Edwards | 59 | 11/7/2002 | Shelton, Washington |
| Unknown Male | 31 | 3/16/2003 | Albuquerque, New Mexico |
| Terrance Hanna | 51 | 4/19/2003 | Burnaby, B.C., Canada |
| Joshua Hollander | 22 | 5/10/2003 | Normal Heights, California |
| Timothy Sleet | 44 | 6/9/2003 | Springfield, Missouri |
| Clay Willey | 33 | 6/22/2003 | Prince George, B.C., Canada |
| Troy Nowell | 51 | 8/4/2003 | Amarillo, Texas |
| Walter C. Burks | 36 | 8/7/2003 | Minneapolis, Minnesota |
| John Thompson | 45 | 8/8/2003 | Carrolton Township, Michigan |
| Gordon Rauch | 39 | 8/17/2003 | Citrus Heights, California |
| Ray Austin | 25 | 9/24/2003 | Gwinnett, Georgia |
| Richard Glenn Leyba | 37 | 9/29/2003 | Glendale, Colorado |
| Clark E. Whitehouse | 34 | 9/2003 | Whitehorse, Yukon, Canada |
| Roman G. Pierson | 40 | 10/7/2003 | Brea, California |
| Dennis Hammond | 31 | 10/11/2003 | Oklahoma City, Oklahoma |
| Louis Morris | 50 | 10/21/2003 | Orlando, Florida |
| James L. Borden | 47 | 11/6/2003 | Monroe County, Indiana |
| Michael S. Johnson | 32 | 11/10/2003 | Oklahoma City, Oklahoma |
| Kerry K. O'Brien | 31 | 11/11/2003 | Pembroke Pines, Florida |
| Curtis Lawson | 40 | 12/9/2003 | Unadilla, Georgia |
| Lewis S. King | 39 | 12/9/2003 | St. Augustine, Florida |
| David Glowczenski | 35 | 2/4/2004 | Southampton Village, N.Y. |
| Raymond L. Siegler | 40 | 2/12/2004 | Minneapolis, Minnesota |
| Curt Rosentangle | 44 | 2/21/2004 | Silverdale, Washington |
| William Lomax | 26 | 2/21/2004 | Las Vegas, Nevada |
| Perry Ronald | 28 | 3/23/2004 | Edmonton, Alberta, Canada |
| Terry L. Williams | 45 | 3/28/2004 | Madison, Illinois |

| Name | Approx. Age | Approx. Date of Death | Location |
|---|---|---|---|
| Phillip LaBlanc | 36 | 4/1/2005 | Los Angeles, California |
| Melvin Samuel | 28 | 4/16/2004 | Savannah, Georgia |
| Alfredo Diaz | 29 | 4/18/2004 | Orange County, Florida |
| Eric Wolle | 45 | 4/27/2004 | Washington Grove, Maryland |
| Roman Andreichikov | Unknown | 5/1/2004 | Vancouver, B.C., Canada |
| Peter Lamonday | 38 | 5/13/2004 | London, Ontario, Canada |
| Henry J. Lattarulo | 40 | 5/22/2004 | Hillsborough County, Florida |
| Frederick J. Williams | 31 | 5/27/2004 | Gwinnet County, Georgia |
| Darryl L. Smith | 46 | 5/30/2004 | Atlanta, Georgia |
| Anthony C. Oliver | 42 | 5/31/2004 | Orlando, Florida |
| Jerry Pickens | 55 | 6/4/2004 | Bridge City, Louisiana |
| James A. Cobb | 42 | 6/9/2004 | St. Paul, Minnesota |
| Jacob J. Lair | 29 | 6/9/2004 | Sparks, Nevada |
| Robert Bagnell | 44 | 6/23/2004 | Vancouver, B.C., Canada |
| Kris J. Lieberman | 32 | 6/24/2004 | Bushkill Twp., Pennsylvania |
| Eric B. Christmas | 36 | 6/2004 | Dayton, Ohio |
| Demetrius T. Nelson | 45 | 7/3/2004 | Okaloosa County, Florida |
| Willie Smith | 48 | 7/11/2004 | Auburn, Washington |
| Jerry Knight | 29 | 7/14/2004 | Mississauga, Ontario, Canada |
| Milton Salazar | 29 | 7/23/2004 | Mesa, Arizona |
| Keith Tucker | 47 | 8/2/2004 | Las Vegas, Nevada |
| Samuel Truscott | 43 | 8/8/2004 | Kingston, Ontario, Canada |
| Ernest Blackwell | 29 | 8/11/2004 | St. Louis, Missouri |
| David Riley | 41 | 8/11/2004 | Joplin, Missouri |
| Anthony L. McDonald | 46 | 8/13/2004 | Harrisburg, North Carolina |
| William Teasley | 31 | 8/16/2004 | Anderson, South Carolina |
| Richard Karlo | 44 | 8/19/2004 | Denver, Colorado |
| Michael L. Sanders | 40 | 8/20/2004 | Fresno, California |

| Name | Approx. Age | Approx. Date of Death | Location |
|------|-------------|-----------------------|----------|
| Lawrence Davis | 27 | 8/24/2004 | Phoenix, Arizona |
| Jason Yeagley | 32 | 8/27/2004 | Winter Haven, Florida |
| Michael R. Rosa | 38 | 8/29/2004 | Del Rey Oaks, California |
| Samuel Wakefield | 22 | 9/12/2004 | Rio Vista, Texas |
| Andrew Washington | 21 | 9/15/2004 | Vallejo, California |
| Jon Merkle | 40 | 9/20/2004 | Miami, Florida |
| Dwayne A. Dunn | 33 | 10/4/2004 | Lafayette, Louisiana |
| Greshmond Gray | 25 | 11/2/2004 | LaGrange, Georgia |
| Robert Guerrero | 21 | 11/2/2004 | Fort Worth, Texas |
| Keith Raymond Drum | Unknown | 11/7/2004 | Clearlake, California |
| Ricardo Zaragoza | 40 | 11/8/2004 | Elk Grove, California |
| Charles Keiser | 47 | 11/25/2004 | Hartland Township, Michigan |
| Byron Black | 39 | 11/27/2004 | Lee County, Florida |
| Patrick Fleming | 35 | 12/4/2004 | Metairie, Louisiana |
| Kevin Downing | 36 | 12/15/2004 | Hollywood, Florida |
| Douglas Meldrum | 37 | 12/17/2004 | Wasatch County, Utah |
| Lyle Nelson | 35 | 12/17/2004 | Columbia, Illinois |
| Timothy Bolander | 31 | 12/23/2004 | Delray Beach, Florida |
| Ronnie Pino | 31 | 12/23/2004 | Sacramento, California |
| Christopher Hernandez | 19 | 12/28/2004 | Naples, Florida |
| Jeanne Hamilton | 46 | 12/29/2004 | Palmdale, California |
| David Cooper | 40 | 12/30/2004 | Marion County, Indiana |
| Gregory Saulsbury | 30 | 1/2/2005 | Pacifica, California |
| Dennis Hyde | 30 | 1/5/2005 | Akron, Ohio |
| Carl Trotter | 33 | 1/8/2005 | Pensacola, Florida |
| Unknown Man | Unknown | 1/28/2005 | Chickasha, Oklahoma |
| Jeffrey Turner | 41 | 1/31/2005 | Lucas County, Ohio |
| Ronald Alan Hasse | 54 | 2/10/2005 | Chicago, Illinois |

| Name | Approx. Age | Approx. Date of Death | Location |
|------|-------------|----------------------|----------|
| Robert Camba | 45 | 2/12/2005 | San Diego, California |
| Joel D. Casey | 52 | 2/18/2005 | Houston, Texas |
| Robert Heston | 40 | 2/20/2005 | Salinas, California |
| Shirley Andrews | 38 | 3/3/2005 | Cincinnati, Ohio |
| Willie Towns | 30 | 3/6/2005 | Deland, Florida |
| Milton Woolfolk | 39 | 3/12/2005 | Lake City, Florida |
| Mark Young | 25 | 3/17/2005 | Indianapolis, Indiana |
| James Wathan, Jr. | 32 | 4/3/2005 | Delhi, California |
| Eric Hammock | 43 | 4/3/2005 | Fort Worth, Texas |
| Ricky Barber | 46 | 4/8/2005 | Carter County, Oklahoma |
| John Cox | 39 | 4/22/2005 | Bellport, New York |
| Keith Graff | 24 | 5/3/2005 | Phoenix, Arizona |
| Kevin Geldart | 34 | 5/5/2005 | Moncton, N.Brunswick, Canada |
| Stanley Wilson | 44 | 5/6/2005 | Miami, Florida |
| Lawrence Berry | 33 | 5/6/2005 | Jefferson Parish, Louisiana |
| Vernon Young | 31 | 5/13/2005 | Union Township, Ohio |
| Leroy Pierson | 55 | 5/17/2005 | Rancho Cucamonga, Calif. |
| Randy Martinez | 40 | 5/20/2005 | Albuquerque, New Mexico |
| Lee Marvin Kimmel | 38 | 5/23/2005 | Reading, Pennsylvania |
| Richard Alverado | 38 | 5/23/2005 | Tustin, California |
| Walter L. Seats | 23 | 5/26/2005 | Nashville, Tennessee |
| Nazario Solorio | 38 | 6/2/2005 | Escondido, California |
| Unknown Man | 33 | 6/4/2005 | Sacramento, California |
| Russell Walker | 47 | 6/6/2005 | Las Vegas, Nevada |
| Horace Owens | 48 | 6/11/2005 | Ft. Lauderdale, Florida |
| Michael A. Edwards | 32 | 6/13/2005 | Palatka, Florida |
| Carolyn Daniels | 25 | 6/24/2005 | Fort Worth, Texas |
| Unknon Man | Unknown | 6/29/2005 | Miami, Florida |

| Name | Approx. Age | Approx. Date of Death | Location |
|---|---|---|---|
| Gurmeet Sandhu | 41 | 6/30/2005 | Surrey, B.C., Canada |
| Rockey Bryson | 41 | 6/7/2005 | Burmingham, Alabama |
| Kevin Omas | 17 | 6/12/2005 | Eulees, Texas |
| Unknown Man | Unknown | 6/15/2005 | Phoenix, Arizona |
| Michael Crutchfield | 40 | 7/2005 | West Palm Beach, Florida |

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.


**REQUEST NO. 53:**    Documents concerning any payments by Defendant to any government officials, such as Phoenix, Arizona Law and Public Safety Committee Chairman Dave Siebert, that have been used by Taser to make sales presentations for or to promote the use of Tasers.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.


**REQUEST NO. 54:**    Documents concerning any Taser International stock options granted or stock given to any active law enforcement or government officials at any time.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 55:**    Documents concerning all studies, tests, communications, information, or data, whether final or preliminary, concerning your statement in your "Explanation of Changes to Taser International, Inc.'s Training CD Version 12.0 November 2004" that Tasers would be "referred to as 'non-Lethal'" as opposed to "less-lethal."

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 56:**    Documents concerning all studies, tests, communications, information, data, whether final or preliminary, supporting or contradicting your statement in your June 28, 2005 "Training Bulletin" that "[r]epeated, prolonged, and/or continuous exposure(s) to the Taser electrical discharge may cause strong muscle contractions that impair breathing and respiration, particularly when the probes are placed across the chest or diaphragm."

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 57:**    Documents concerning all studies, tests, communications, information, data, whether final or preliminary, supporting or contradicting your statement in your June 28, 2005 "Training Bulletin" that "[u]sers should avoid prolonged, extended,

uninterrupted discharges or extensive multiple discharges whenever practicable in order to minimize the potential for over-exertion of the subject or potential impairment of full ability to breathe over a protracted time period."

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 58:**    Documents concerning all studies, tests, communications, information, data, whether final or preliminary, supporting or contradicting your statement in your June 28, 2005 "Training Bulletin" that "[e]xcited delirium is a potentially fatal condition caused by a complex set of physiological conditions including over-exertion of the subject and inability for sufficient respiration to maintain normal blood chemistry."

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 59:**    Documents concerning all studies, tests, communications, information, data, whether final or preliminary, supporting or contradicting your statement in your June 28, 2005 "Training Bulletin" that "[excited delirium] subjects are at significant and potentially fatal health risks from further prolonged exertion and/or impaired breathing."

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 60:**      Documents concerning all studies, tests, communications, information, data, whether final or preliminary, supporting or contradicting your statement in your June 28, 2005 "Training Bulletin" that "[t]he user should attempt to minimize the uninterrupted duration and total number of Taser device applications."

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 61:**      Documents concerning all studies, tests, communications, information, data, whether final or preliminary, supporting or contradicting your statement in your June 28, 2005 "Training Bulletin" that "extensive field use data, scientific, and other medical research and evidence supports that Taser devises generally do not cause lasting aftereffects or fatalities . . ."

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 62:**    Documents concerning all studies, tests, communications, information, data, whether final or preliminary, supporting or contradicting your statement in your June 28, 2005 "Training Bulletin" that "the use of a Taser device upon a person or animal may be stressful and contribute to exertion or exhaustion, including injury or death caused by an individual's exhaustion or over-exertion" and that "[r]epeated, prolonged, and/or continuous Taser device exposure(s) may contribute to or cause cumulative exertion or exhaustion results or effects."

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 63:**    Documents concerning your decision to "supersede all prior warnings for Taser devices" with your June 28, 2005 "Training Bulletin."

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 64:**    Documents concerning all members of your Scientific and Medical Advisory Board, including but not limited to, professional resumes and curriculum vitae.

27

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 65:**    Documents concerning all studies, tests, communications, information, and data, conducted on TIIs by members of your Scientific and Medical Advisory Board.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 66:**    Documents concerning all meetings held by your Scientific and Medical Advisory Board.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 67:**    Documents evidencing the structure of your Scientific and Medical Advisory Board.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 68:**     Documents concerning any agreements or contracts with any third party for the distribution and sale of Tasers, including but not limited to the distribution of promotional and marketing materials and training guidelines.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 69:**     Documents concerning any agreements or contracts with any third party for the training of law enforcement officers in connection with the use of Tasers.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 70:**     Documents concerning any and all injuries or deaths reported to Taser International in connection with or following the use of Tasers.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 71:**     Documents concerning any lawsuit in which Taser International has been sued for personal injury or wrongful death in connection with Tasers.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 72:**    Documents concerning any and all communications between Taser International and Ronald Burge, former Chief of Police for the Village of Dolton.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. TII further objects to the extent this Request seeks documents protected by the attorney-client privilege or the work-product doctrine. Without waiving these objections, TII states that only document responsive to this request is the Declaration of Ronald Burge, dated October 5, 2005, which is produced herewith.

**REQUEST NO. 73:**    Documents concerning the October 5, 2005, Declaration of Ronald Burge, former Chief of Police for the Village of Dolton.

**RESPONSE:** TII states that it has not documents responsive to this request other than the Declaration of Ronald Burge, dated October 5, 2005, which is produced herewith.

**REQUEST NO. 74:**    Documents concerning all communications with the Attorney General's office for the State of Arizona concerning your marketing, promotion, or sales of Tasers.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 75:**    Documents concerning all injuries to law enforcement or corrections officers during Taser training.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 76:**    Documents concerning all communications with Dr. Cyril Wecht.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 77:**    Documents concerning all reports provided by Dr. Cyril Wecht to you concerning Taser.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff regarding any reports concerning the X26, as purchased by Plaintiff.

**REQUEST NO. 78:**   Documents concerning any and all communications with Palestine, Illinois Police Chief James L. Clark.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 79:**   Documents identified or referred to in Defendant's Rule 26(a) Initial Disclosures.

**RESPONSE:** TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 80:**   Documents concerning Tasers authored by any potential expert witnesses identified in Defendant's Rule 26(a) Initial Disclosures.

**RESPONSE:** TII objects to this Request on the grounds that it is vague and ambiguous, in that no Tasers have been authored by any person. Without waiving these objections, and to the extent it understands this Request, TII states that it will produce responsive documents to Plaintiff.

**REQUEST NO. 81:**   Documents concerning any correspondence between Defendant and any potential expert witnesses identified in Defendant's Rule 26(a) Initial Disclosures.

**RESPONSE:** TII objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents not reasonably calculated to lead to the discovery of

32

admissible evidence. Without waiving these objections, TII states that it will produce responsive documents to Plaintiff.

## GENERAL OBJECTIONS

1.     TII objects to Plaintiff's "Definitions" and "Instructions" to the extent they conflict with or modify TII's obligations under the Federal Rules of Civil Procedure or impose burdens upon it beyond those specified in the Federal Rules of Civil Procedure.

2.     TII objects to the Document Requests to the extent that they are vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

3.     TII objects to the Document Requests to the extent that they seek information that is protected from disclosure by applicable doctrines of privilege, including, without limitation, the attorney-client privilege, the attorney work product doctrine, and/or any other applicable legal privilege and/or protection.

4.     TII objects to the Document Requests to the extent that they seek documents already in the possession of Plaintiff which can be obtained from third parties with less burden and expense than obtaining them from TII.

5.     TII objects to the Document Requests to the extent that they state, suggest, or imply that any of the defenses or Affirmative Defenses asserted by TII in the above-captioned action are barred.

6.     TII objects to the Document Requests to the extent that they call for or require disclosure of information that is not in its possession, custody or control.

7.     The provision of any information or documents by TII in response to the Request is not and shall not be deemed or construed as a waiver of any privilege, right, or objection on the part of TII with respect to any such information. In the event that privileged information, matter prepared for and/or in anticipation of litigation, or matter that is attorney's work product is inadvertently provided by TII, such provision is not and shall not be deemed or construed as a waiver of any privilege, right or objection on the part of TII and TII reserves the right to demand the return of any such document and all copies thereof.

8.     The phrase "without waiving these objections," or language of similar import and substance, used by TII in its responses to the Document Requests shall mean that any and all information provided by TII in response to such Document Requests may not be construed as waiver of any general or specific objection asserted by TII herein.

9.     TII is continuing its investigation and reserves the right to rely on any facts, documents, or other evidence it may develop or that may come to its attention at a later time. TII's responses to these Document Requests are based on information known at this time and such responses are set forth without prejudice to TII's right to supplement its responses or assert additional objections should it discover additional information or grounds for objection. TII specifically reserves the right to supplement or amend its responses to the Document Requests at any time before trial.

10.     No incidental or implied admissions of fact by TII are made by the responses below. The only admissions are express admissions. The fact that TII has responded to any Document Request herein may not be properly taken as an admission that TII accepts or admits the existence of any fact set forth or assumed by such Document Request, or that such response constitutes admissible evidence. The fact that TII has produced documents in response to part of

34

or all of any Document Request is not intended to, and shall not be, construed to be a waiver by TII of all or any part of any objection to any Document Request made by TII.

11.    TII will not reproduce documents that have been produced by Plaintiff in the course of this action, if any, which may be responsive to the Document Requests.

12.    These General Objections are incorporated into each of the responses set forth below.

Respectfully submitted,

John R. Maley
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433
E-mail: john.maley@btlaw.com

David T. Ballard
BARNES & THORNBURG LLP
One North Wacker Drive
Suite 4400
Chicago, Illinois 60606
Telephone: (312) 357-1313
Facsimile: (312) 759-5646
E-mail: david.ballard@btlaw.com

Attorneys for Defendant
TASER International, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of March, 2006, the following counsel were served by regular U.S. mail, postage prepaid:

John K. Vrdolyak
Vrdolyak Law Group
741 North Dearborn Street
Chicago, Illinois 60610

William K. Cavanagh
Cavanagh & O'Hara
407 East Adams Street
P.O. Box 5043
Springfield, Illinois 62705

Paul J. Geller
Robert J. Robbins
Marisa N. DeMato
LeRach Coughlin Stoia Geller Rudman & Robbins LLP
197 South Federal Highway, Suite 200
Boca Raton, Florida 33432

Robert Rothman
LeRach Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, New York 11747

John R. Maley

CHDS01 315163v1

36

# EXHIBIT "C"

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VILLAGE OF DOLTON, on       )
behalf of itself and all others similarly situated, )
                        )
           Plaintiff,     )
                        )    Case Number 05-C-4126
    vs.              )
                        )
TASER INTERNATIONAL, INC., a Delaware )
corporation,            )
                        )
           Defendant.    )
                        )

## REPORT OF PARTIES' PLANNING MEETING

    1.      Pursuant to Fed. R. Civ. P. 26(f), a telephonic meeting was held on November 8,

2005, and was attended by Robert J. Robbins, Esq. for plaintiff, Village of Dolton, and David T.

Ballard, Esq. for defendant, TASER International, Inc.

    2.    **Initial Disclosures.**  The parties agree that by December 15, 2005, they will

exchange the information required by Fed. R. Civ. P. 26(a)(1).

    3.    **Discovery Plan.**  The parties jointly propose to the Court the following discovery

plan:

        (a)      The parties agree that discovery will be needed on the following subjects:

Plaintiff anticipates requiring discovery on the safety and testing of TASER devices, defendant's

marketing and distribution of TASERS, TASER sales, TASER-related training, deaths or injuries

following use of a TASER device, TASER warranties, and class certification issues. Defendant

anticipates requiring discovery on plaintiff's use and purchase of TASER devices, examination

of plaintiff's TASER devices, Plaintiff's damages, and class certification issues.

(b)     **Deadline for Discovery.**  Plaintiff proposes that all fact discovery be commenced in time to be completed by November 15, 2006.  Defendant proposes that all discovery be commenced in time to be completed by June 19, 2006.

(c)     **Interrogatories.**  The parties agree to a maximum of 30 interrogatories by each party to any other party, with responses due 30 days after service.

(d)     **Requests for Admission.**  The parties agree to a maximum of 50 requests for admission by each party to any other party, with responses due 30 days after service.

(e)     **Depositions.**  Plaintiff proposes, exclusive of depositions of experts, a maximum of 20 depositions by plaintiff and 20 by defendant, without further leave of Court. Plaintiff proposes that each deposition be limited to maximum of 8 hours unless extended by agreement of parties or order of the Court.  Defendant proposes, exclusive of depositions of experts, a maximum of 8 depositions by plaintiff and 8 by defendant, without further leave of Court.  Defendant proposes that each deposition be limited to maximum of 5 hours unless extended by agreement of parties or order of the Court.

(f)     **Retained Expert Reports.**  Plaintiff proposes that reports from retained experts for plaintiff and defendant under Rule 26(a)(2) be due January 15, 2007.  Defendant proposes that reports from retained experts for plaintiff under Rule 26(a)(2) be due February 3, 2006 and that reports from retained experts for defendant under Rule 26(a)(2) be due April 3, 2006.

(g)     **Depositions of Experts.**  Plaintiff proposes that depositions of retained experts will be completed by March 15, 2007.  Defendant does not propose a deadline for the deposition of experts, except that all discovery be commenced in time to be completed by June 19, 2006.

(h)    **Rebuttal Experts.**    Plaintiff proposes that any rebuttal experts and disclosures relating to rebuttal experts must be made by no later than April 15, 2007. Defendant does not propose a deadline for the disclosure of rebuttal experts, except that all discovery be commenced in time to be completed by June 19, 2006.

(i)    **Discovery Supplementations.**    Plaintiff proposes that supplementations under Rule 26(e) be due within 30 days after the event requiring supplementation. Defendant proposes that supplementations under Rule 26(e) be due 60 days from the date of discovery responses.

4.    **Other Items.**

(a)    **Pretrial Conference.**    Plaintiff proposes a pretrial conference in June, 2007. Defendant proposes a pretrial conference in October, 2006.

(b)    **Joinder of Parties and Amendments to Pleadings.**    The parties cannot determine if amendments will be necessary at this time. Plaintiff proposes that plaintiff and defendant be allowed until January 15, 2007 to join additional parties and amend the pleadings. Defendant proposes that plaintiff should be allowed until January 2, 2006 to join additional parties and amend the pleadings. Defendant proposes that defendant should be allowed until March 2, 2006 to join additional parties and amend the pleadings.

(c)    **Dispositive Motions.**    Plaintiff proposes that all potentially dispositive motions should be filed by April 15, 2007. Defendant proposes that all potentially dispositive motions should be filed by August 3, 2006.

(d)    **Settlement.**    The likelihood of settlement cannot be evaluated at this time.

(e)    **Stipulations and Evidentiary Issues.**    The parties agree that they will meet to discuss the stipulation of facts and the authentication of documents at least ten (10) days

prior to any trial date set by this Court. The parties currently are not aware of any need for advance rulings of admissibility of evidence, but the parties agree that any motions in limine shall be filed prior to the calendar call in this action. The parties will seek to obtain admissions and stipulations in order to avoid unnecessary proof.

(f)    **Final Witness and Exhibit Lists.** Plaintiff proposes that final lists of witnesses and exhibits under Rule 26(a)(3) should be due from plaintiff and defendant by May 15, 2007. Defendant proposes that final lists of witnesses and exhibits under Rule 26(a)(3) should be due from plaintiff by November 1, 2006 and by defendant by December 1, 2006.

(g)    **Objections to Final Witness and Exhibit Lists.** The parties agree that they should have 21 days after service of final lists of witnesses and exhibits to list objections under Rule 26(a)(3).

(h)    **Trial.** Plaintiff proposes that the case should be ready for trial by July 15, 2007. Defendant proposes that the case should be ready for trial by January 8, 2007. The parties agree that trial is expected to take approximately 10 days.

5.    **Modification of the Schedule.** The parties agree that all dates set forth herein may be modified by written agreement of the parties and approval of the Court, or upon motion to the Court for good cause shown or by the Court.

Dated: November 10, 2005.

**VRDOLYAK LAW GROUP**

John Vrdolyak
741 North Dearborn
Chicago, Illinois 60610
(312) 482-8200

**CAVANAGH & O'HARA**
William K. Cavanagh
407 East Adams Street
P.O. Box 5043
Springfield, Illinois 62705
Tel: (217) 544-1771
Fax: (217) 544-9894

**LERACH COUGHLIN STOIA GELLER**
      **RUDMAN & ROBBINS LLP**
Paul J. Geller
Robert J. Robbins
197 South Federal Highway, Suite 200
Boca Raton, Florida 33432
Tel: (561) 750-3000
Fax: (561) 750-3364

**LERACH COUGHLIN STOIA GELLER**
      **RUDMAN & ROBBINS LLP**
Robert Rothman
200 Broadhollow, Suite 406
Melville, NY 11747
Tel: (631) 367-7100
Fax: (631) 367-1173

*Counsel for Plaintiff*

**BARNES & THORNBURG LLP**

John R. Maley
Alejandro Valle
11 South Meridian Street
Indianapolis, IN 46204-3535
Tel: (317) 236-1313
Fax: (317) 231-7433

**BARNES & THORNBURG LLP**
David T. Ballard
Suite 4400
One North Wacker Drive
Chicago, Illinois 60606-2833
Tel: (312) 357-1313
Fax: (312) 759-5646

*Counsel for Defendant*

5

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of November, 2005, a copy of the foregoing was filed electronically. The undersigned counsel of record was served via the Court's electronic filing system.

> John K. Vrdolyak
> 741 North Dearborn Street
> Chicago, Illinois 60610

The following counsel were served by regular U.S. mail, postage prepaid.

> William K. Cavanagh
> Cavanagh & O'Hara
> 407 East Adams Street
> P.O. Box 5043
> Springfield, Illinois 62705
>
> Paul J. Geller
> Robert J. Robbins
> Marisa N. DeMato
> LeRach Coughlin Stoia Geller Rudman & Robbins LLP
> 197 South Federal Highway, Suite 200
> Boca Raton, Florida 33432
>
> Robert Rothman
> LeRach Coughlin Stoia Geller Rudman & Robbins LLP
> 200 Broadhollow, Suite 406
> Melville, New York 11747

# EXHIBIT "D"

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 2.5
### Eastern Division

Village of Dolton

              Plaintiff,

v.

Taser International Inc.

              Defendant.

Case No.: 1:05–cv–04126
Honorable James F. Holderman

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, April 5, 2006:

      MINUTE entry before Judge James F. Holderman : Pursuant to status hearing held on 11/15/2005, the court sets the discovery schedule as agreed by the parties. Fact discovery ordered closed by 11/15/2006. Parties are allowed 20 depositions per side in accordance with the plaintiffs' proposal. Plaintiff shall comply with FRCP(26)(a)(2) by 1/15/07. Defendant shall comply with FRCP(26)(a)(2) by 3/5/07. Depositions of retained experts to be completed by 4/6/07. Plaintiff's rebuttal expert reports due 5/7/07. Defendant's rebuttal expert reports due 6/8/07. Expert discovery ordered closed by 6/29/2007. Dispositive motions with supporting memoranda due by 8/15/2007. Responses due by 9/12/2007. Replies due by 9/26/2007. Plaintiff&#039;s draft of the pretrial order to be provided to defendant by 10/22/07. Defendant to provide additional materials by 10/29/07. Final Pretrial Order due by 11/1/2007. Motions in limine with supporting memoranda due by 11/1/2007. Responses due by 11/8/2007 Pretrial Conference set for 11/15/2007 at 03:00 PM. Jury Trial set for 11/19/2007 at 09:00 AM. Mailed notice(dl, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

11-15-05D Dolton v. Taser.txt

1

| 1 | UNITED STATES DISTRICT COURT |
| 2 | NORTHERN DISTRICT OF ILLINOIS |
| | EASTERN DIVISION |

| 3 | VILLAGE OF DOLTON, on behalf of itself ) |
| | and all others similarly situated, ) |
| 4 | ) |
| | Plaintiffs, ) |
| 5 | ) |
| | vs. ) No. 05 C 4126 |
| 6 | ) |
| | TASER INTERNATIONAL, INC., a ) |
| 7 | Delaware corporation, ) Chicago , Illinois |
| | ) November 15, 2005 |
| 8 | Defendant. ) 9:00 o'clock a.m. |

9              TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE JAMES F. HOLDERMAN

10

11   APPEARANCES:

12   For the Plaintiffs:          LERACH, COUGHLIN, STOIA,
                                  GELLER, RUDMAN & ROBBINS, LLP
13                                BY:  MR. ROBERT M. ROTHMAN
                                  200 Broadhollow Road
14                                Suite 406
                                  Melville, New York  11747
15                                (877) 992-2555

16   For the Defendant:           BARNES & THORNBURG
                                  BY:  MR. DAVID T. BALLARD
17                                One North Wacker Drive
                                  Suite 4400
18                                Chicago, Illinois 60606
                                  (312) 357-1313

19

20

21

22

23              COLLEEN M. CONWAY, CSR, CRR
                   Official Court Reporter
24        219 South Dearborn Street, Room 2144-A
                  Chicago, Illinois  60604
25                   (312) 435-5594
              colleen_conway@ilnd.uscourts.gov


          Colleen M. Conway, Official Court Reporter


                         Page 1

2

11-15-05D Dolton v. Taser.txt

1      (Proceedings in open court.)

2          THE CLERK:  05 C 4126, Village of Dolton versus

3  Taser International, status.

4          MR. BALLARD:  Good morning, Your Honor.

5          David Ballard on behalf of Taser International.

6          MR. ROTHMAN:  Robert Rothman on behalf of the

7  plaintiffs.

8          THE COURT:  Good morning.

9          I have reviewed your report of planning meeting,

10 and I appreciate the time and effort that you have put into

11 it.

12         I understand your respective positions, and I

13 understand the plaintiffs' desire to move this matter as

14 promptly as possible.

15         It seems to me, given all of the circumstances,

16 including the class action allegations, that with regard to

17 the discovery deadline, I believe that the discovery deadline

18 proposed by the defendant is more reasonable, June of next

19 year.  That is eight months from now, approximately.

20         And so we should be able to get all the discovery

21 done, and I expect that there won't be any need for any

22 requests for continuances with regard to the discovery.

23         So you should provide your 26(a)(1) material, as

24 you had agreed to, by December 15, 2005.  And then discovery

25 is to be commenced in time, and that is all discovery,


Colleen M. Conway, Official Court Reporter

0


3

1  including expert discovery, is to be commenced in time to be

2  completed by June 19th, 2006.
                    Page 2

11-15-05D Dolton v. Taser.txt

3          With regard to that, the scope of the discovery and

4     the magnitude of the discovery, that appears to be

5     appropriate.  I am glad you were able to reach an agreement

6     on that.

7          As to the retained experts, since we are basically

8     following the defense proposal, we will have the defense

9     proposal followed with regard to that as well, and that would

10    mean that the plaintiffs' experts' 26(a)(2) reports are due

11    February 3rd, 2006.

12         And that is rather aggressive, in my opinion, even

13    though -- and it is only three weeks, approximately, after

14    the date that the plaintiffs had proposed.

15         I was desirous, though, of finding out why the

16    defendant needed 60 days after that to put the defendant's

17    experts together.  I had assumed that the defendant would

18    have experts even within the employ of the defendant to

19    assist in this endeavor.

20         MR. BALLARD:  Your Honor, we would just ask for

21    time afterwards.  And, you know, we just put down 60 days,

22    and I don't believe it'll necessarily have to be even that

23    long, but I think that we would want to have opinions

24    responding to plaintiffs' opinions, and that is the -- that's

25    why we put some time afterwards.


          Colleen M. Conway, Official Court Reporter


                                                        4

1          THE COURT:  Okay.  Well, because you are really

2     going to be pushing right up to that June 19th date, and I

3     really don't want to extend that date at all.

4          Is it possible to, say, cut it back to 45 days
                        Page 3

11-15-05D Dolton v. Taser.txt

5    rather than 60 days and provide the defendant's experts'

6    26(a)(2) reports by St. Patrick's Day, March 17.

7            MR. BALLARD:  That's fine, Your Honor.

8            THE COURT:  Is that agreeable?  All right.  I think

9    that appears to be more reasonable.

10           You can proceed with the discovery, further

11   discovery, if you desire, of the plaintiffs' experts and then

12   provide your experts by March 17th, and that would allow

13   further time for rebuttal experts that you have proposed.

14           Well, let me just ask plaintiffs' counsel.  You are

15   going to have the defendant's positions by March 17.  You are

16   going to be able to take, hopefully, their depositions the

17   last part of March.

18           In fact, I would request that defense counsel

19   inform their experts that the last two weeks in March, from

20   the 17th through the 31st, the experts set their schedules so

21   that they can be available.

22           And then how much time do the plaintiffs desire for

23   rebuttal experts, since you anticipated rebuttal experts?

24           MR. ROTHMAN:  We would request 30 days for rebuttal

25   experts.


            Colleen M. Conway, Official Court Reporter


                                                        5

1            But, Your Honor, going back to our initial expert

2    reports --

3            THE COURT:  Yes.

4            MR. ROTHMAN:  -- we're not going to be getting even

5    the 26(a) disclosures till December 15th.

6            THE COURT:  Yes.

                    Page 4

11-15-05D Dolton v. Taser.txt

7          MR. ROTHMAN:  That gives us only two months to get
8  our expert reports in.
9          THE COURT:  Well, right, but --
10          MR. ROTHMAN:  We're not even going to have any fact
11  discovery.
12          THE COURT:  You had proposed an earlier date.
13          MR. ROTHMAN:  No, no, I don't believe so, Your
14  Honor.  I think we proposed the date the following year.
15          We were waiting till after fact discovery.
16          THE COURT:  I thought that was a typo.
17          MR. ROTHMAN:  No, Your Honor.  We were waiting
18  until after discovery so that our experts would have a
19  factual basis --
20          THE COURT:  I am sorry.
21          MR. ROTHMAN:  -- upon which to base their report.
22          THE COURT:  Okay.  So --
23          MR. ROTHMAN:  And I --
24          THE COURT:  -- since I now understand the
25  plaintiffs' proposal to not be a typo of June 15, 200 --


Colleen M. Conway, Official Court Reporter


                                                          6

1  well, what I thought was June 2006 --
2          MR. BALLARD:  No, no.  Your --
3          THE COURT:  That's why I said it is three weeks
4  after you proposed it.  You proposed then --
5          MR. ROTHMAN:  We proposed November 15th, 2006.
6          THE COURT:  Okay.
7          MR. BALLARD:  So, Your Honor, going back to 3(b), I
8  think you are getting confused on it.
                        Page 5

11-15-05D Dolton v. Taser.txt

9            Plaintiffs propose November 15th, '06, and I think

10    you're confusing the typo to be June 19th, '07, but June

11    19th, '06 is our proposal.

12            MR. ROTHMAN:  That was defendant's proposal.

13            THE COURT:  Okay.  Well, yes, I apologize.  I

14    thought the plaintiffs had wanted, as is typical, to move the

15    matter along --

16            MR. ROTHMAN:  And, Your Honor, we do have every

17    incentive to move the matter along.  However, we believe our

18    experts need the factual discovery upon which to base their

19    expert opinions.

20            And simply giving them three months after expert --

21    after initial disclosures -- if we serve our document

22    demands, we don't get documents till 30 days later, and we

23    can't take depositions until we review the documents -- they

24    won't really have the factual basis they need upon which to

25    draft their reports.


            Colleen M. Conway, Official Court Reporter

0

                                       7

1            THE COURT:  All right.  So the plaintiffs want to

2    slow the matter down even further.

3            MR. ROTHMAN:  Well, we wanted to actually stagger

4    discovery and have expert discovery follow merits/factual

5    discovery so that the experts would have a full factual basis

6    upon which to base their reports.

7            THE COURT:  Okay.  All right.  Well, I typically

8    try to allow counsel dates that they desire, and I apologize

9    for the confusion on my part.

10            All right.  Well, then let's reset everything.

11-15-05D Dolton v. Taser.txt

11      November 15th, 2006, an entire year away, to

12   complete all fact discovery.

13      MR. ROTHMAN:  Well, Your Honor, the reason why we

14   have asked for so much time is that not only do we have to

15   take discovery about the safety of the Tasers, the design of

16   the Tasers, the testing of the Tasers, but there have been

17   more than 150 deaths associated with the Tasers.  It's going

18   to require us to review the investigatory files for all

19   those.  That's --

20      THE COURT:  Okay.  But you had proposed only 20

21   depositions per side.  That is the other --

22      MR. ROTHMAN:  That's correct.  They deposed -- they

23   proposed eight depositions per side.

24      THE COURT:  Right.

25      MR. ROTHMAN:  The reason why we propose 20,


          Colleen M. Conway, Official Court Reporter


                                                          8

1   although we think that we may ultimately need more, we were

2   willing to live within the 20, is that in a recent trial that

3   Taser had, they listed 115 witnesses on their witness list.

4      THE COURT:  Okay.  All right.  Well, all discovery

5   is to be commenced in time to be completed by November 15,

6   2006.

7      All right.  I will allow 20 depositions per side in

8   accordance with the plaintiffs' proposal.

9      With regard to the plaintiffs' and defendant's

10   expert reports, you didn't want it staggered, you wanted them

11   both at the same time.

12      MR. ROTHMAN:  Right.  Well, we wanted them
                          Page 7

11-15-05D Dolton v. Taser.txt
13  bifurcated after factual discovery is what I meant to say.
14          THE COURT:  Fact discovery is to be completed by
15  November 15, 2006.
16          And then the plaintiffs had proposed, since that is
17  not a typo of 2007, that all expert reports, both plaintiffs'
18  and defendant's, be provided simultaneously on January 15th,
19  2007.
20          That is what you are proposing?
21          MR. ROTHMAN:  Yes.
22          THE COURT:  What is the defense position?
23          MR. BALLARD:  Your Honor, this is -- that's way too
24  much time.  I don't think there's any reason why we need to
25  go that far.


                Colleen M. Conway, Official Court Reporter


                                                            9
1           This is a breach of contract case.  There's class
2   issues, which will take some more time, but that's basically
3   it.  I don't know why we are getting so far along.
4           THE COURT:  Right.
5           MR. BALLARD:  I think we can move the case along
6   much quicker.
7           THE COURT:  Why does the defendant -- or, I am
8   sorry, why do the plaintiffs need 90 days after fact
9   discovery is concluded?  You are going to be preparing your
10  experts before then, aren't you?
11          MR. ROTHMAN:  We are going to be preparing -- we're
12  going to be working with our experts throughout the factual
13  discovery.
14          THE COURT:  Right.  So you are going to know who
                            Page 8

11-15-05D Dolton v. Taser.txt

15   they are.

16          MR. ROTHMAN:  Yes.

17          THE COURT:  So why do you need 90 days?

18          MR. ROTHMAN:  We just wanted them to be able to

19   prepare complete and thorough reports so that --

20          THE COURT:  All right.  You get 90 days, January

21   15, 2007.

22          All right.  Then the depositions --

23          MR. ROTHMAN:  I believe that's only 60 days, Your

24   Honor.

25          THE COURT:  I am sorry?


Colleen M. Conway, Official Court Reporter


                                                              10

1          MR. ROTHMAN:  I think it's 60 days after fact

2    discovery.

3          THE COURT:  January 15, 2007.

4          MR. ROTHMAN:  Correct.

5          THE COURT:  Is that the date you wanted?

6          MR. ROTHMAN:  Yes.

7          THE COURT:  Okay.  And then you desire to complete

8    the depositions -- well, let me ask, does the defense desire

9    to provide their expert reports after the plaintiffs' expert

10   reports?

11          MR. BALLARD:  Yes, Your Honor.  We would want --

12          THE COURT:  And how much time do you need?

13          MR. BALLARD:  You gave us 45 days, and that will be

14   fine.

15          THE COURT:  All right.  Forty-five days after that

16   would then be -- let's make it March 5th, 2007.

Page 9

11-15-05D Dolton v. Taser.txt

17        And then how much time, then, do you need to
18  complete the depositions of the initial experts?
19        MR. ROTHMAN:  I would think we could do that in 30
20  days, Your Honor.
21        THE COURT:  Well, the defense can start taking the
22  plaintiffs' experts' depositions as soon as the reports are
23  provided, and the plaintiffs' counsel could start taking the
24  defendant's expert depositions within 30 days of the -- or as
25  soon as the defendant's expert reports are available.


        Colleen M. Conway, Official Court Reporter


                                                            11
1         So 30 days would take us to -- let's make it April
2   6th, all right?  April 6, 2007.
3         And then how much time do you need for rebuttal
4   reports?
5         MR. ROTHMAN:  Thirty days, Your Honor.
6         THE COURT:  What does the defense need?
7         MR. BALLARD:  About thirty days.  We would ask for
8   the same.
9         THE COURT:  Do you desire to do those
10  simultaneously or do you want to do those staggered as well?
11        MR. BALLARD:  We'd ask that they be staggered as
12  well.
13        THE COURT:  Okay.  So 30 days from April 6th for
14  the plaintiffs' rebuttal expert reports will be May 7, 2007,
15  and then 30 days after that would be June -- let's make it
16  June 8, 2007.
17        And then can we wrap up all expert discovery, then,
18  rebuttal expert discovery, by June 29th, Friday, June 29,
                        Page 10

11-15-05D Dolton v. Taser.txt

19   2007?

20          MR. ROTHMAN:  Yes.

21          MR. BALLARD:  I would suspect so.

22          THE COURT:  All right.  How much time, then, do you

23   need for dispositive motions?

24          MR. ROTHMAN:  Forty-five days, Your Honor.

25          THE COURT:  Forty-five days?  Okay.  August 15.


          Colleen M. Conway, Official Court Reporter


                                                    12

1           How much time for a response?

2           MR. BALLARD:  We ask for 28 days.

3           THE COURT:  Twenty-eight days is September 12.

4           How much time for a reply?

5           MR. ROTHMAN:  Fourteen days.

6           THE COURT:  September 26.  I will rule in October.

7           Let's file the final pretrial order November 1.

8           Motions in limine should be filed that same day,

9    separate from the order, separate from one another so there

10   is a separate docket entry for each motion.

11          Responses to any motions in limine should be filed

12   by November 8, 2007.

13          We will set the case for a final pretrial

14   conference on November 15, 2007 at 3:00 p.m., unless you have

15   already got something scheduled for that time.  No?

16          MR. ROTHMAN:  No.

17          MR. BALLARD:  No.

18          THE COURT:  Okay.  And how about going to trial the

19   following week?  We will have a three-day or

20   two-and-a-half-day start and then we will proceed to complete
                            Page 11

11-15-05D Dolton v. Taser.txt

21    the trial by the 30th.

22              How does that sound?

23              MR. BALLARD:  That's fine.

24              THE COURT:  Okay.  All right.  Now, in order to get

25    the materials on file by November 1, the plaintiffs have to


              Colleen M. Conway, Official Court Reporter


                                                              13

1    provide them, the plaintiffs' position, no later than October

2    25 so the defendant can review and add additional

3    materials -- well, let's make the plaintiffs' November 20 --

4    I am sorry, October 22 so the defendant can provide

5    additional materials by October 29, and you can reach

6    resolution and file a joint final pretrial order by November

7    1, as we stated, and we are set for trial on Monday, November

8    19, 2007 at 9:00 a.m.

9              See you then.

10              MR. ROTHMAN:  Thank you, Your Honor.

11              MR. BALLARD:  Thank you, Your Honor.

12              THE COURT:  Thank you.

13              We will refer the matter to the magistrate judge

14    for settlement and discovery resolution, if there is a need

15    for it.

16              Thank you.

17        (Proceedings concluded.)

18

19

20

21

22                        Page 12

11-15-05D Dolton v. Taser.txt
23
24
25

Colleen M. Conway, Official Court Reporter

0

1                    C E R T I F I C A T E
2
3
4
5          I, Colleen M. Conway, do hereby certify that
6   the foregoing is a complete, true, and accurate transcript of
7   the proceedings had in the above-entitled case before the
8   Honorable JAMES F. HOLDERMAN, one of the judges of said
9   Court, at Chicago, Illinois, on November 15, 2005.
10
11
12   _____          _____
13          Official Court Reporter                  Date
     United States District Court
     Northern District of Illinois
14          Eastern Division
15
16
17
18
19
20
21
22
23
24
                        Page 13

11-15-05D Dolton v. Taser.txt

25

Colleen M. Conway, Official Court Reporter

# EXHIBIT "E"



LERACH
COUGHLIN
STOIA
GELLER
RUDMAN
&ROBBINS LLP

SAN DIEGO · SAN FRANCISCO
LOS ANGELES · NEW YORK · BOCA RATON
WASHINGTON, DC · HOUSTON
PHILADELPHIA · SEATTLE

Robert J. Robbins
(561) 886-3068 Direct
rrobbins@lerachlaw.com

April 3, 2006

*Via Facsimile and U.S. Mail*

John R. Maley
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN 46204-3535

David T. Ballard
Barnes & Thornburg LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606-2833

**Re:    Village of Dolton v. Taser International, Inc.**

Gentlemen:

We received Defendant's Response to Plaintiff's First Request for Production of Documents. In granting you extensions to respond to the document requests, we relied upon your false representation that you would produce substantive documents. To the contrary, you have stonewalled the discovery process with baseless objections and selective responses wherein you have determined, without regard to the Federal Rules of Civil Procedure, what documents you will allow us to see while simultaneously withholding scores of responsive documents.

Your utter lack of good faith is most aptly demonstrated by your failure to produce a single internal Taser International e-mail. It is beyond comprehension that your client, a publicly traded company, does not have a single e-mail responsive to discovery requests concerning the safety profile, marketing, and performance testing of its premiere product line. Further, your responses and document production ignore the fact that this action is a putative class action. You baselessly refuse to produce any class-related discovery. Under the Federal Rules of Civil Procedure, we are entitled to documents that substantiate our allegations that this case is appropriate for class treatment.

Accordingly, we request you withdraw your objections to our discovery requests and produce all requested documents to us within 10 days. If you refuse our request, we demand an immediate telephonic consultation, consistent with Northern District of Illinois Local Rule 37.2. If you continue to refuse to produce responsive documents following the consultation, we will promptly file a motion to compel.

We await your response.

Very truly yours,

Robert J. Robbins

RJR/jc                                Robert J. Robbins

197 South Federal Highway, Suite 200 · Boca Raton, FL 33432 · 561.750.3000 · Fax 561.750.3364 · www.lerachlaw.com

# BARNES & THORNBURG LLP

David T. Ballard
(312) 338-5914
Email: dballard@btlaw.com

Suite 4400
One North Wacker Drive
Chicago, IL 60606-2833 U.S.A.
(312) 357-1313
Fax (312) 759-5646

www.btlaw.com

April 13, 2006

Robert J. Robbins
LeRach Coughlin Stoia Geller
  Rudman & Robbins LLP
197 South Federal Highway, Suite 200
Boca Raton, Florida 33432

Re:   *Village of Dolton v. TASER International, Inc.*
      Case No.: 05 C 4126

Dear Robert:

Pursuant to Northern District of Illinois Rule 37.2, this letter attempts to resolve the issues you have raised concerning what you consider to be TASER Int'l's "baseless objections and selective responses" to Plaintiff's First Request for Production of Documents ("discovery requests"). As outlined below, TASER Int'l will supplement its production of documents with documents concerning the safety of the TASER® electronic control devices in order to resolve Plaintiff's objections, but will not withdraw its objections as stated in TASER Int'l's responses to Plaintiff's discovery requests.[1]

As an initial matter, Plaintiff's document requests are overly broad at this stage of the litigation. Plaintiff has requested the production of documents concerning the safety profile, marketing, and performance testing of all of its TASER devices (i.e. almost every document in TASER Int'l's possession). You claim that Plaintiff is entitled to any documents that substantiate its allegations that this case is appropriate for class treatment. Although the federal rules allow you to conduct limited discovery for the purposes of class certification, you must make a *prima facie* showing that you are entitled to these documents. *See Schager v. Union Life Ins. Co.*, No. 85 C 8244, 1987 U.S. Dist. LEXIS 6231, *10-11 (N.D. Ill. July 6, 1987) ("[W]hen a nationwide class action is alleged involving potentially enormous discovery, plaintiff must advance a prima facie showing that discovery is likely to produce information substantiating the viability of a class.") (quoting *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985)). *See also Heerwagon v. Clear Channel Commc'n*, 435 F.3d 219, 234 (2d Cir. 2006).

Plaintiff has not made any *prima facie* showing that the documents you request are likely to substantiate class certification. In fact, you make no attempt to limit Plaintiff's discovery requests to just issues involving the necessary elements for class certification. Rather, Plaintiff's discovery requests are extremely broad and unduly burdensome, and do not seem to be intended for any purpose other than to harass TASER Int'l into producing almost all documents ever

---

[1] TASER is a registered trademark of TASER Int'l.

Robert J. Robbins
April 13, 2006
Page 2

created or received.  This form of discovery is improper at the pre-certification stage of this case as the only issues at this time involve solely the Village of Dolton.  *See Vodak v. City of Chicago*, No. 03 C 2463, 2004 U.S. Dist. LEXIS 8235, *5-6 (N.D. Ill. May 10, 2004) (Court directed defendant to provide information only with respect to the named plaintiffs prior to any class certification); *Nat'l Org. of Women v. Sperry Rand Corp.*, 88 F.R.D. 272, 277 (D. Conn. 1980) ("Unnecessarily broad discovery will not benefit either party.  To spend either three million or three hundred thousand dollars, in order to move a mountain of documents and statistics from the defendant's facilities to the plaintiffs' offices, would be, in this pre-certification context, a wasteful and unjustifiable action.").

To date, Plaintiff has not presented any evidence, through depositions or discovery responses, that support a *prima facie* case for class certification.  Until Plaintiff makes such a showing, TASER Int'l stands by its objections and responses to Plaintiff's discovery requests, as they are neither baseless nor selective.

Nevertheless, in the spirit of trying to resolve these issues pursuant to Northern District of Illinois Rule 37.2, TASER Int'l will produce its Research Compendium, which is responsive to Plaintiff's requests for documents concerning the safety profile and performance testing of its TASER devices.  A copy of the research compendium is attached to this letter.  In addition, TASER Int'l is in the process of redacting names of volunteers involved in its Officer Volunteer Reports and names of officers and suspects from the Field Use Reports for privacy purposes. Once all of the names have been redacted, TASER Int'l will produce all Officer Volunteer Reports and Field Use Reports in its possession.

Please feel free to call me if you would like to discuss this further.

Very truly yours,

BARNES & THORNBURG LLP

*David T. Ballard*

David T. Ballard

DTB/bes
Enclosures

BARNES & THORNBURG LLP